Where under certain circumstances it was not necessary to make one of the legatees a party in a suit by the other

If a defendant in chancery agrees that a bill should be filed against him by certain complainants, he will not be allowed afterwards to object for the want of other parties

CROMWELL, et al. vs. OWINGS.

APPEAL from a decree of the Court of Chancery dismissing the bill of the complainants, (now appellants.)

The cause, which is sufficiently stated in the opinion delivered by this court, was argued before BUCHANAN, EARLE, MARTIN, DORSEY, and STEPHEN, J.

*Taney* and *Winder,* for the appellants, stated that the bill was filed by consent on the 22d of January 1819, by certain of the devisees of *Samuel Owings,* deceased, against the defendant, another devisee, and executor of the deceased, with a view of referring the subject matter in dispute to arbitrators, as appears by an agreement for that.

purpose executed by the parties on the 22d of June 1818. The cause was accordingly referred to arbitrators, who made an award. To this award certain objections were made, some of which were sustained by the chancellor. It was also objected that *Beale Owings*, one of the residuary legatees, had not been made a party; and the chancellor dismissed the bill. They contended, 1. That the objections to the award were unfounded; and 2. That the bill, answer and agreements, were a waiver of the objection to make *B. Owings* a party, even if it were originally necessary to have made him a party, and constitute a specific contract between the complainants and the defendant, which a court of chancery would carry into effect. On the *first point* they referred to *Morgan vs. Mather*, 2 *Ves. jr.* 22. *Dick vs. Milligan*, Ibid 24, 28. 1 *Bac. Ab.* tit. *Arbitration & Award*, (F) 228, (G) 231, (note,) (J) 238. On the *second point* they referred to *Cooper's Plead.* 34.

*Heath* and *R. Johnson*, for the appellee, on the *first point* relied upon *Goldsmith vs. Tilly*, 1 *Harr. & Johns.* 362, and the act of October 1778, *ch.* 21, *s.* 8; and on the *second point* they relied upon *Cockburn vs. Thompson*, 16 *Ves.* 326. *Chancey vs. May*, Pre. in *Chan.* 592. 2 *Madd. Chan.* 145. *Baldwin vs. Harpur*, *Ambl.* 375. *Hannan vs. Stevens*, 1 *Vernon*, 110. *Kirk vs. Clarke*, Pre. in *Chan.* 275. 1 *Harr. Chan. Pr.* 81. *Sherrit vs. Birch*, 3 *Bro. Ch. Ca.* 229. *Parsons vs. Neville*, Ibid 365. *Capron vs. Van Noorden*, 2 *Cranch*, 126; and *Coale et al. vs. Stewardson*, in this court in 1811.

The opinion of the court was delivered by,

BUCHANAN, J. *Samuel Owings* by his will, dated the 7th of May 1803, among other things, devised certain lands to *William Owings*, his executor, to sell, and the proceeds to be distributed among eight of his children named in the will, of whom *Beale Owings* was one. The testator also bequeathed the proceeds of certain personal property to be distributed in like manner. One of the eight legatees is since dead, having issue two children.

The bill is by six of the legatees named in the will, and the two children and representatives of the deceased legatee, calling on the executor and trustee to account and pay to them their respective proportions; and *Beale Owings*, the other legatee named, is not made a party to the

proceedings either as complainant or defendant. The chancellor, by agreement in writing of the respective solicitors, passed an order referring the matters in controversy between the parties to referrees named in the agreement, who returned an award ascertaining the sum due to each of the complainants, and directing the same to be paid to them respectively by the defendant, and also directing the defendant, by a good and sufficient conveyance, to transfer certain lands, bonds, &c. to a trustee to be appointed by the chancellor. Objections were filed by the defendant to a decree being passed on the award, founded on objections raised to the award itself, and also on the circumstance that *Beale Owings* was not made a party to the proceedings; whereupon the chancellor passed an order, in which he expressed the opinion, that *Beale Owings* ought to have been made a party to the proceedings; that the arbitrators had exceeded their powers in awarding a change of trustees; and that *Peter Hoffman* had exercised an improper influence over the arbitrators—and afterwards dismissed the bill for want of proper parties. First, then, as to the award:—It is clear that an award upon a reference to arbitrators, cannot be impeached for erroneous judgment upon facts; but the arbitrators, being judges chosen by the parties themselves, their decision on matters of fact cannot be reviewed, but is final and conclusive, where there is no imputation on their conduct. *Morgan vs. Mather*, and *Dick vs. Milligan*, 2 *Vesey, Junr.* 14, 24. The subject of the award in this case, being matters of account, they were facts, on which it was the province of the arbitrators to decide, and their judgment cannot be inquired into, but the parties are concluded and bound by it, unless a foundation is laid for setting aside their award, by an imputation on the conduct of the arbitrators. And no such foundation is laid, the objections to the award being all confined to the decision of the arbitrators on questions of fact, except so far, as in the opinion of the chancellor, there is a colourable charge of improper influence practiced by *Peter Hoffman* upon the arbitrators, and except also the objection to so much of the award as is alleged to be without the submission. Exceptions to an award cannot be founded upon any thing *dehors*, but must always be confined to matter appearing upon the face of it, compared with the proceedings in the cause, and are never heard

1823.

Cromwell
vs
Owings

upon affidavits. But if it is proposed to set aside an award for any matter *dehors*, as corruption or misbehaviour on the part of the arbitrators, or other charges to be sustained by evidence, it can only be done on *motion* supported by affidavits. *Dick and Milligan.* 2 *Vesey Jr.* 24 With respect therefore to the supposed influence exercised by *Peter Hoffman* over the arbitrators, being altogether *dehors* the award, it cannot be received or acted upon to the prejudice of the award, in the form of exception, but ought to have been proceeded on by way of motion to set aside the award. But if it could be taken advantage of by way of exception, or if in the place of an exception to the award, it had been made the foundation of a motion to set it aside, and could now be so considered, there is nothing whatsoever in the record to sustain it. The letter of the 15th of October 1819, from the arbitrators to the defendant, on which the opinion of the chancellor was founded, and which is now relied upon to show the undue influence of *Peter Hoffman* over the arbitrators, does not seem to this court to furnish the slightest ground for such an imputation. The sole office of that letter was to inform the defendant that the account he had exhibited to them, had been submitted to *Peter Hoffman*, acting in behalf of the complainants, and that he had insisted on proof being made of all the charges it contained—with a request, that he would furnish such proof, and also let them know whether he had any further account to produce. If the arbitrators had acted on that account, without requiring proof of the charges it contained, or letting the complainants, or their agent, know that such a paper had been exhibited, there would perhaps have been cause for complaint on the other side—or, if they had rejected the account, without affording the defendant an opportunity of proving it, or had refused to receive evidence in support of it, then indeed a charge of misconduct on the part of the arbitrators would have had some ground to stand upon; but it is difficult to perceive how any imputation on the conduct of the arbitrators can arise from that letter. The other objection, *that a part of the award is not within the submission*, being to what arises on the face of the award, it comes properly in the form of an exception; and it is very clear, that so much of the award, as respects the removal of the defendant as trustee, and the appointment

1823.

Cromwell
vs
Owings

of another trustee by the chancellor in his place, is without the submission, and void. But it is well settled, that if an award be both of matter, that is submitted, and of that which is not within the submission, it may be good as to all that is within the submission, and void as to the residue. 1 *Bac. Ab.* tit. *Arbitrament and Award,* and the authorities there referred to. Therefore, though a part of this award is of that which is not submitted, and consequently void, yet being entirely distinct matter, it does not vitiate or affect so much of the award as is within the submission, but as to that the award is good, being of what does not depend upon the matter awarded, without the terms of the submission. As to the objection, that *Beale Owings* ought to have been made a party, the ground on which the bill was dismissed by the chancellor, it is a general rule, that all persons should be made parties who are either legally or beneficially interested in the subject matter and result of the suit; and admitting, that in a different state of things it would have been proper and necessary to have made him a party, being a legatee named in the will of *Samuel Owings;* yet under the circumstances of this case, that necessity does not exist. Before the institution of this suit, *Beale Owings* had himself filed a separate bill in chancery against the defendant *William Owings;* and on the 22d of January 1819, this bill was filed on the same day the answer was put in, and received by agreement without oath; on the same day also, the parties, complainants and defendant, filed a written agreement, signed by their respective solicitors, to refer the matters in controversy between them to *David Williamson, David Winchester* and *Henry Brice,* in pursuance of a request on the part of the defendant contained in a paper filed in the cause, dated the 22d June 1818, and signed by him and *Peter Hoffman,* one of the complainants, in which also the answer before put in by him to the bill of *Beale Owings,* is directed by the defendant, *William Owings,* to be copied and filed in this suit, then about to be brought, the object of which is stated to be an amicable adjustment of the estate of his father; and on the next day, the 23d of January 1819, the chancellor passed the order, referring the matters in dispute to the persons before named and agreed upon. Thus it is manifest, that this was originally an amicable proceeding, and that it was perfectly understood and agreed upon, before the bill was filed, that *Beale*

*Owings* should not be made a party, but that the defendant, and these complainants alone, would proceed to a settlement of their affairs, leaving him to pursue his own course. How else can the agreement of the 22d of June 1818 be understood? The suit had not then been brought, but is there treated of as an amicable bill about to be filed, with authority given by *William Owings* to a solicitor to appear to it for him; and his instructions that a copy should be taken and filed of the answer he had made to the bill of *Beale Owings,* show that that case was then present to their minds, and that the bill about to be filed, was mutually agreed upon, for the purpose of adjusting the separate claims of these complainants by arbitration, under the sanction of the court of chancery. It was in conformity to, and in furtherance of these views of the respective parties, that the bill and answer, and the agreement by their solicitors to refer the suit, were filed on the same day, without process to bring in the defendant, or requiring the answer to be on oath; and the deed from *William Owings* of the 30th of March 1819 to *Thomas Moale, Peter Hoffman* and *George Winchester,* soon after the bringing of this suit, to secure the payment of the supposed amount of the respective claims of these very complainants, furnishes additional evidence of the understanding of the parties before and at the time the bill was filed. Surely, without calling in aid a court of justice, the defendant and these complainants, or either of them, might have submitted the matter in dispute between them to arbitration, and the award, when made, would have been binding and conclusive upon them; and if so, there is nothing to prevent their resorting, by consent, to a court of chancery, to effect that, under the sanction of a rule of court, which might have been done by submission out of court without suit; and it does not lie in the mouth of the defendant to object, that *Beale Owings* ought to have been made a party, after putting the complainants to the trouble and expence of a suit in chancery, on the faith of his agreement. But the order of reference being made with the assent of his solicitor, at his express request, the award, so far as it is within the submission, is obligatory upon him; and *Beale Owings,* not being a party to the submission, and altogether unaffected by it, there would have been no propriety in making him a party to the suit afterwards, for the purpose of a decree upon

the award, in which he was in no way concerned, any more than it would be necessary to unite him in a bill to enforce the execution of an award made on a submission by *William Owings* and these complainants, to which he was not a party, or in a bill in chancery to foreclose a mortgage given by *William Owing's* to these complainants, or any of them, to secure the payment of their respective claims; in neither of which cases can it be pretended, that *Beale Owings* would be a necessary party. The agreement by *William Owings*, that a bill should be filed by these complainants alone, was a contract by which he was bound and estopped to object, in violation of his agreement, to a decree upon the award, on the ground that *Beale Owings* was not a party to the suit. We therefore think, that the chancellor erred in dismissing the bill for that reason.

