## Frederick Roloson *vs.* David Carson, Jr.

Mistakes committed by the arbitrators in drawing incorrect inferences or forming erroneous judgments or conclusions from facts, will not vitiate their award.

A mistake that will vitiate an award must be gross and manifest, and of some fact by which the arbitrators were deceived and misled.

The courts have by a long course of decisions manifested a strong inclination to sustain the judgments pronounced by arbitrators.

It is not necessary that the parties should have *notice* of or be present at the meeting of the arbitrators at which the award is made up and signed.

Arbitrators, like jurors, have the privilege of consultation in private for the purpose of making their award.

A prayer that an award is void because the arbitrators, without previous notice to, and in the absence of, the other, read an *ex-parte* affidavit of one of the parties, "though the jury believe it had *little or no* influence on the minds of the arbitrators," is defective, because it would have justified the jury in vacating the award for what they believed had *no effect* upon the decision.

A more liberal and reasonable interpretation of awards is now adopted than formerly; every reasonable intendment will be made in their favor, and a construction given to them that will support them, if possible, without violating the rules adopted for the construction of written instruments.

A prayer that an award was void because of improper conduct of the arbitrators, without leaving to the jury to find any facts constituting the misconduct, is erroneous.

A prayer that an award is void because not in accordance with the submission as proved by *one witness*, is defective, there being *other witnesses* who testified in regard to the terms of the submission.

Where the appellant has received *no injury* from an erroneous ruling of the court below, the case will not be sent back under a *procedendo.*

Under the act of 1834, ch. 233, sec. 11, the court has a *discretion* as to what time the exceptions shall be prepared or signed, provided they are completed prior to the verdict, and the exercise of such discretion is not a subject of revision on appeal.

As a general rule, the most appropriate time to prepare an exception is immediately after the decision excepted to is made.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* by the appellant against the appellee, to recover for damages sustained by reason of the alleged defective and unworkmanlike manner in which defendant had built a warehouse under an agreement with the plaintiff, in consequence of which the warehouse fell down. Plea, *non assumpsit,* with an agreement that either party may give in evidence any matter which he could rely on by any form or mode of pleading.

*1st Exception.* The plaintiff offered in evidence the agreement, by which the defendant contracted to build a warehouse for the plaintiff, adjoining that now occupied by him and corresponding with the same, for $2500. "The buildings now on the premises to be taken down, as also the south gable-end wall of old warehouse, all of the bricks to be properly cleaned and piled ready for use. The joist of old building to be stayed and shored up to receive the girders, which is to be used in the place of the wall." He then proved by Harris, that after a part of the warehouse fell down, the plaintiff and defendant mutually agreed to refer the matter to witness and John Nant, to ascertain the cause of the damage, and at whose expense it should be repaired or who was liable for the damage done; that they met on the premises, in the presence of the parties, and called in Mr. Curley to their assistance; that the three examined the premises, heard the statements of both parties, held three or four meetings, at all of which, except that at which

27    v.8

the witnesses were examined and that at which the award was made out and signed, both plaintiff and defendant were present; that the agreement under which the warehouse was built was produced by the plaintiff at the second or third meeting; that at one of the meetings, five witnesses were examined at the instance of the plaintiff; that neither of the parties was present at the examination of the witnesses, but written questions were left by the plaintiff with the arbitrators to be propounded to the witnesses; that afterwards, the arbitrators met and made out the award, which was offered in evidence and set out in full in the opinion of this court.

Much testimony was then offered by both parties chiefly as to the strength and proper construction of an old foundation wall which defendant claims he built upon by direction of plaintiff, who instructed him to allow the old wall to remain. The plaintiff alleged and offered evidence that the old wall was strong enough, and that defendant built upon it in an improper manner. On the other hand, defendant offered in evidence that the old wall was badly built and that the fall was occasioned thereby. It was also proved, that at a meeting of the arbitrators, held before the award was made, an affidavit of the defendant was sent in by him, which was received and considered by the arbitrators, but one of them states it had no influence in forming his judgment; that plaintiff was not present at this meeting, nor was any previous notice given to the parties to attend.

The plaintiff then, to prove the damage sustained by the fall of the building, offered to prove there was a quantity of pork and other provisions belonging to the firm of plaintiff and one Littig, who held possession of the premises at the time of the accident as tenants of the plaintiff, injured thereby; but it being admitted there was another suit on the docket by this firm against the defendant for this damage, the court, (FRICK, J.,) on motion of defendant, rejected the evidence so offered, and to this ruling the plaintiff excepted.

*2nd Exception.* The plaintiff having excepted to the ruling of the court in regard to a question propounded to a witness, his counsel proceeded to write his exception, and with the

Roloson *vs.* Carson.

sufferance of the court, the examination of the witnesses, meanwhile, was suspended. But after waiting fifteen minutes, the court ordered the examination to be proceeded with, against the objection of plaintiff's counsel, who had not completed the writing of his exception. The court announced, that as there was associate counsel for the plaintiff, the examination of the witnesses must be proceeded with, and the counsel could write his exception at any time before the verdict was rendered and the court would sign it. To this ruling the plaintiff excepted.

*3rd Exception.* This exception was taken by the plaintiff to the refusal of the court below to grant his six prayers, all of which are sufficiently stated in the opinion of the court.

The verdict and judgment were in favor of the defendant and the plaintiff appealed.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J.

HARVARD LAW SCHOOL LIBRARY

*Vivian Brent* for the appellant, stated, that the main questions in this case arise under the third exception relating to the validity and effect of the award, but that he desired, however, an expression of this court's opinion upon the second exception. He then argued the questions arising upon the third exception.

Before considering the law of awards as applicable to the prayers contained in this exception, I desire to submit some authorities as to the legal merits of the plaintiff's right to recover damages on the facts detailed in the statement of evidence. Defendant was the agent of the plaintiff for hire to build the house, and he was in the business or profession of house-builder. The rule in such case is, that he is bound to have competent skill and is liable for loss occasioned by his ignorance, neglect or want of skill. *Paley on Agency*, 5, 10, 76, 77, 78. 14 *Mass.*, 282, *Taft vs. The Inhabitants of Montague.* The very undertaking to build for hire is a representation that he had the requisite skill and judgment, and *would use* that skill and judgment, and his *breach of contract*

may be given in evidence to reduce his claim for compensation *or as the foundation of a cross-action.* 3 *Starkie's Rep.*, 6, *Duncan vs. Blundell.* 1 *Camp.*, 38, *Farnsworth vs. Garrard.* 1 *Car. & Pay.*, 352, *Moneypenny vs. Hartland, et al.;* also same case in 2 *Car. & Pay.*, 378.   And even where the specific price is agreed on and the employer has encouraged the agent in the *improper work* the employer has a remedy by cross-suit. 3 *Starkie on Ev.*, 1770. 2 *Saund. Pl. & Ev.*, 962.   But it will be said on this that Roloson substituted his own judgment and adopted the stone wall as *a foundation.*   On this point see the case of *Duncan vs. Blundell* cited above.   But no subsequent acts of Roloson can control or change the meaning of the *contract.* 6 *H. & J.*, 418, *Key vs. Parnham.* 1 *H. & G.*, 74, *Ringgold vs. Ringgold.* 10 *G. & J.*, 279, *Vincent vs. Chapman.*   If Roloson accepted the old stone wall and gave no specific instructions where or how to place the columns it was then left to *the* skill and competent judgment of the builder, and he should have examined the mortar and the sides of the wall and placed the columns most judiciously, and secured them with proper plates and distribution of pressure as shown in the evidence.   Again, it is for the jury to say how much the accident was referable to the bulging of the *south wall.*   Moreover there is no proof of the exercise of the personal skill or judgment of Carson.   The columns were placed and sighted by White in his absence and without instructions, and we have White's *own admissions* in evidence.   Carson is responsible for the want of skill and care of his agents. 2 *Kent's Com.*, 279.   6 *G. & J.*, 291, *Steam Co. vs. Hungerford.*   See further, as to damages by way of deduction from the stipulated price, *Thornton vs. Place*, 1 *Moody & Rob*, 218.

The award sought to be impeached by the prayers under review is clearly obnoxious to the objections taken in those prayers.   The principles of law on this subject are well established, and each of these prayers ought to have been granted. In England it is clear that no award can be impeached for misconduct of arbitrators except by bill in equity, unless made a rule of court. 8 *East*, 344, *Braddick vs. Thompson.* 1

*Saund. Rep.*, 32, *Birks vs. Trippet, note (a.)* 59 *Law Lib.*, 156. But even there you may, by pleading, invalidate the award by matter on its face. 11 *East*, 191, *Fisher vs. Pimbley.* Or by pleading extrinsic matters. 9 *Eng. C. L. Rep.*, 54, *Cargey vs. Aitcheson.* Or that there was no award, and support it by showing fraud in the submission. 18 *Eng. C. L. Rep.*, 242, *Sackett vs. Owen.* But even in England this whole doctrine is favorably expounded for the impeachment of awards, by *Mr. Saunders* quoting *Mr. Philip on Evidence.* 1 *Saund. Pl. & Ev.*, 186. And where nothing can be done under the award but by suit, the court will leave all objections to be decided in the suit. 1 *Bac. Abr.*, 376. 7 *Term Rep.*, 74, *Pedley vs. Goddard.*

But be that as it may, no such rule has ever prevailed in Maryland, and there being no reason in it, we are free to follow our own practice, which is the simplest and most convenient. Where the award sets forth the facts as here, and draws erroneous inferences of law on the facts, it is vacated at law. 2 *H. & McH.*, 478, *Oliver vs. Heap.* It is expressly decided, that any irregularity in the arbitrators is a defence in Maryland, (9 *G. & J.*, 11, *Shriver vs. The State*,) contrary to the English law as laid down in 63 *Law Lib.*, 371. And want of notice is fatal in Maryland, (3 *Gill*, 49, *Bullitt vs. Musgrave*,) not so at law in England. We therefore consider that the irregularities or improprieties of arbitrators are available at law in Maryland, as by bill in equity, especially where they amount to legal fraud. Courts of law relieve negatively against frauds. 6 *H. & J.*, 255, *Lamborn vs. Watson.* Therefore we use the following decisions: 1 *H. & J.*, 361, *Goldsmith vs. Tilly.* 3 *Gill*, 49, *Bullitt vs. Musgrave.* 9 *Gill*, 175, *State vs. Williams.* 6 *H. & J.*, 95, *Hewitt vs. The State.* Mistake of fact will vitiate the award where the fact appears on the face of the award and the mistake appears *aliunde* by evidence. 59 *Law Lib.*, 164. 2 *Story's Eq.*, sec. 14. 2 *Vernon*, 705, *Corneforth vs. Geer.* 5 *Sergt. & Rawle*, 51, *Large vs. Passmore.* 4 *Dallas*, 284, *Williams vs. Paschall.* 1 *H. & J.*, 361. 2 *H. & McH.*, 478, *Oliver vs. Heap. Kyd on Awards*, 327. 3 *H. & McH.*, 118, *Til-*

*lard vs. Fisher.* But here is a mistake in law apparent on the face of the award as based on the facts assumed. The meeting at which the award was made and agreed upon is as essential as any other meeting, and no *notice* of that is proved. *Caldwell on Arbitrations*, 206. 6 *H. & J.*, 406, *Rigden vs. Martin. Watson on Awards*, 73. 3 *Gill*, 49. Notice is always necessary or the award is void. 3 *Gill*, 49. 7 *Gill*, 497, *Emery vs. Owings.* Again, the conduct of the arbitrators in receiving the affidavit of Carson touching the contract vacates the award. (63 *Law Lib.*, 172, 173, 177. 1 *Dallas*, 161, *Hollingsworth vs. Leiper.* *Ibid.*, 187, *Chaplin vs. Kirwan.* 6 *Ves.*, 70, *Walker vs. Frobisher.* 9 *Do.*, 67, *Fetherstone vs. Cooper. Watson on Awards*, 170. 8 *Taunt.*, 694. *In re, Hick et al.* 4 *Dallas*, 232, *Falconer vs. Montgomery.* 2 *Halst.*, 428, *Harker vs. Hough*,) although they swear it had no influence. 63 *Law Lib.*, 175, 176.

*Henry P. Brooks* and *Levin Gale* for the appellee, stated, that the decisions of the court below in the first two exceptions need not be discussed, because even if wrong they are not causes for reversal as the appellant has received *no harm* thereby. They then argued:

1st. That the award offered in evidence in this case not being submitted by rule of court, in pursuance of the acts of Assembly relating to submission of causes pending in courts, the same cannot be inquired into or set aside in this case, unless there is *obvious mistake apparent on the face of the award*, and that there is no such mistake and therefore all the prayers offered by the plaintiff were properly rejected. The mistake that will vitiate an award must be a plain and obvious one *upon its face*, and not a mistake in the *judgment* of the *arbitrators.* It has always been the law, that nothing *dehors* the award can be given in evidence to defeat it. 2 *Story's Eq.*, *sec.* 1452. 63 *Law Lib.*, 434. 51 *Do.*, 107. 59 *Do.*, 155. 3 *Johns.*, 368, *Barlow vs. Todd.* 2 *Do.*, 62, *Newland vs. Douglass.* 3 *Monroe*, 439, *Southard vs. Steele.* 18 *Ala.*, 174, *Strong vs. Beroujon.* 5 *Halst.*, 7, *Shuland vs. Wood.* 13 *New Hamp.*, 72, *Rand vs. Reddington.* 11

*Missouri*, 624, *Finley vs. Finley*. 13 *Ill.*, 454, *Pottle vs. McWorter*. 13 *Verm.*, 484, *Emerson vs. Udall*. 1 *Hill*, 319, *Dater vs. Wellington*. 6 *H. & J.*, 13, *Cromwell vs. Owings*. 9 *Gill*, 172, *State vs. Williams*.

2nd. The plaintiff's second prayer was properly rejected. For even if the award can be inquired into it was immaterial whether the plaintiff was present or not at the meeting at which the award was made, written and subscribed, the arbitrators having the undoubted right to make up their opinion and sign the award in the absence of the parties. Indeed it is difficult to understand how they could consult and decide properly in the presence of the parties. This prayer is confined exclusively to the meeting at which the award was made up and signed, and no other question in regard to *notice* can be raised in this court as none other was presented below. The authorities all say that notice of the *publication* of an award is not *necessary*. 63 *Law. Lib.*, 436. 59 *Do.*, 89.

3rd. The third prayer was properly rejected. For even if the award can be inquired into, the fact that defendant submitted his affidavit to the arbitrators in reference to a matter in dispute does not vitiate the award as it did not affect their decision. 1st. Notice was given to the plaintiff before the award was made, and he did not object nor withdraw his submission, which he could then have done. He should not be allowed to wait until he ascertained which way the award was made, and object only in the event of the award being against him. 21 *Eng. C. L. Rep.*, 371, *Matson vs. Trower*. 12 *Penn. State Rep.*, 134, *Graham vs. Graham*. 4 *Term Rep.*, 589, *Hall vs. Lawrence*. 40 *Eng. C. L. Rep.*, 648, *Bignall vs. Gale*. 63 *Law. Lib.*, 175. 6 *Ves.* 72, *Walker vs. Frobisher*. 4 *Dallas*, 271, *Passmore vs. Pettit*. 2nd. The plaintiff was guilty of the first fault, if it was a fault, by submitting his own statement or letter to the arbitrators. 9 *Ves.*, 67, *Fetherstone vs. Cooper*. 3rd. The prayer itself assumes that no influence was had on the judgment of the arbitrators by the affidavit, and if so no wrong was done by it. This is a different question from the question whether you can inquire whether it had any effect. For although it might be

true that the court, on principles of policy, would not enquire whether a matter, which was improper, had or had not any effect on the judgment of the arbitrators, yet if the plaintiff choses to assume in his prayer that it had no effect he cannot be permitted to ask a reversal for a matter which was entirely barren of results. 6 *Ves.,* 72. 9 *Gill,* 61, *Ramsay vs. Glass.*

4th. The fourth prayer was properly rejected, because there was no mistake of fact made by the arbitrators. It is also erroneous in this, that it submits to the jury the question, whether the arbitrators were mistaken in any of the facts set out on the award, whereas to vitiate the award the *mistake must appear on the face of the award and must be a self-evident mistake, such as a miscalculation or the like;* or it must be admitted by the arbitrators, that they had made a mistake, and that but for that mistake they would have determined otherwise. *The fact that the court or the jury do not agree with the arbitrators in their opinion, or think they were wrong in their conclusion, is not sufficient to vacate the award.* 51 *Law Lib.,* 46, 47. 63 *Do.,* 242 to 246. 6 *Metcalf,* 131, *Boston Water Power Co. vs. Gray.* 11 *How.,* 349. *Benchall vs. Marsh.* 2 *Gallison,* 69, *Kleine vs. Catara.* 6 *H. & J.,* 12, *Cromwell vs. Owings.* 5 *Md. Rep.,* 361, *Ebert vs. Ebert.*

5th. The fifth prayer was properly rejected. The assumption that the award held the defendant exempted from liability alone or entirely, on the ground mentioned in this prayer, is not true in fact, the award not professing to set out all the grounds for the decision given. Even if true it is not erroneous in point of law and not inquirable into. An error of law to vacate an award, if it can be vacated at all for such cause, must be a plain and obvious mistake on a point of law, unmixed with facts, and where no equitable considerations could enter into the subject to be decided. 2 *Gallison,* 69, *Kleine vs. Catara.* 25 *Verm.,* 316, *Spaulding vs. Warren.*

6th. There is no evidence to support the facts assumed in the sixth prayer, and if there was, our argument, on the preceding prayers, shows that this one also was erroneous. Again, it assumes facts which should have been left to the jury. It

Roloson *vs.* Carson.

assumes fraud without submitting the question to the jury, or hypothetically assuming any facts to base the objection of fraud upon.

*Orville Horwitz* for the appellant in reply, argued:

1st. As to the right to inquire into the validity of the award *in this way*, there is a distinction between references under rule of court and submissions out of court. 1st. In cases of references the award returned to court must be set aside on motion when every defence or objection avails that would avail in equity. In 1 *H. & J.*, 364, *Goldsmith vs. Tilley*, the court say: "Every ground of relief in equity against an award is equally open in this court." 2nd. In actions brought on awards or on bonds for submission, or where the award is introduced as a defence there the practice in Maryland is to hear the objections at law. 2 *H. & McH.*, 478, *Oliver vs. Heap*. 3 *H. & J.*, 383, *Walsh vs. Gilmor*. If, when declared on, they can be resisted, *a fortiori* can they *when offered as a defence?* Suppose the award in this case had been *pleaded*, could we not have assailed it?

2nd. How are awards to be considered? They ought not to be held more sacred than the verdicts of juries. 1 *Dallas*, 315, *Williams vs. Craig*. There are two grounds for setting aside an award; either matter *apparent* on the face or matter *dehors*. 1st. As to matter *apparent on the face*. What will suffice? *Mistake of fact apparent on the face*. 1 *H. & J.*, 364. 9 *Gill*, 175, *State vs. Williams*. The conclusion that *"the wall* had not been *well built*," is a wrong conclusion of fact. The defect might have arisen from any *other source. Mistake of law* will also suffice to vacate the award. The obligation of the contractor is to make the *foundation sufficient*, and not merely to pay attention to the building during its progress. As to duties of agent see *Paley on Agency* in 28 *Law Lib.*, 5, 10, 76, 78. 14 *Mass.*, 282, *Taft vs. Inhabitants of Montague*. 2 *Car. & Pay.*, 378, *Moneypenny vs. Hartland, et al.* He must not rely upon another's information, but must look for himself. 1 *Car. & Pay.*, 352, *Moneypenny vs. Hartland, et al.* 3 *Starkie's Rep.*, 6 *Duncan vs. Blundell*.

So that the *implication* of *law would be* that he should see that the foundation *was sufficient*. But the contract *expressly provided for the taking down* of the south gable-end wall and made it his duty to supply its place. The *award proceeds* upon the double error of law; that if he made a *mistake* in his judgment he was relieved; and again, upon the idea that the duty was to superintend diligently. If it appears on the face of the award that there is evidence *not pertinent or legal* relied on by the arbitrators, it will be set aside. *Peck, (Tenn. Rep.,)* 275. 2nd. *As to matters dehors*. Want of notice of last meeting is fatal, for Roloson was thereby deprived of the opportunity of examining McCoy. 1 *H. & J.*, 362, *Selby vs. Gibson*. 6 *H. & J.*, 406, *Rigden vs. Martin*. 3 *Gill*, 49. *Bullitt vs. Musgrave*. 63 *Law Lib.*, 172. The *reading of an ex-parte affidavit by the arbitrators* vitiates the award. 4 *Dallas*, 272, *Passmore vs. Pettit*. 1 *Dallas*, 161, *Hollingsworth vs. Leiper*. 7 *Gill*, 498, *Emery vs. Owings*. 63 *Law Lib* , 173, 174, 176. If the contract has been *misconstrued*, it being in *writing*, the court will correct the error. 5 *Sergt. & Rawle*, 52, *Large vs. Passmore*. Again, the award does not cover the submission, but only decides *part* of the matter in controversy, and for this reason is defective. 5 *G. & J.*, 412, *Armstrong vs. Robinson*. 6 *H. & J.*, 10, *Cromwell vs. Owings*.

ECCLESTON, J., delivered the opinion of this court.

The questions of most importance in the cause are those which relate to the award, we therefore intend directing our attention to them first; although they are presented by the plaintiff's prayers, numbered from two to six, inclusive, which are to be found in the third and last bill of exceptions.

In England, when an award made under a reference *in pais* is sued upon, or is used in defence, in a court of law, it cannot be impeached for matters *dehors* the award. And when the injured party wishes to relieve himself from such an instrument, by proof *aliunde*, he must file a bill in equity to set it aside. In the suit at law he is confined to errors apparent on the face of the award. Not only is it so in England, but like-

wise in many of the States of this Union, as will appear from the authorities referred to by the counsel for the appellee under their first point.

Portions of the plaintiff's evidence intended to impeach the validity of the award should have been rejected in the court below, if objected to as inadmissible, because *dehors* the award. But what those portions are need not now be inquired into; because, even considering the evidence as in the cause, still we think the prayers of the plaintiff were rightfully refused by the court. And this renders it unnecessary to ascertain to what extent, if any, the English rule in regard to the impeachment of awards, similar to the present, has been altered or modified in Maryland.

The award in controversy is in the following language: "The undersigned, Samuel Harris and J. Nant, having been appointed arbitrators by Frederick Roloson of the one part, and David Carson, contractor, of the other part, both of the city of Baltimore, to settle a matter of difference between them respecting the building of an addition to said F. Roloson's warehouse, situate on the west side of N. Paca, between Fayette and Lexington streets, which building or addition to said house, when near being finished and taken possession of by said Roloson, fell down in part, from the fact that the old stone wall which was to remain, and which wall was supposed by all parties to be good and sufficient to support all the weight for which it was intended, gave way or crushed under the iron columns, which caused the damage, showing very plainly that the wall had not been well built. The arbitrators named above, at their second meeting, called in James Curley, and after hearing all the statements of both parties respecting the cause, &c., also examined, under oath, five witnesses called by Mr. Roloson, some of whom had worked upon the building, and others frequently saw the work while in progress; and all of the five witnesses testified that said Carson had paid proper attention to the work from first to last. We therefore, as arbitrators, say, after hearing all the evidence produced in the case, and from our own observation, after a careful examination of the building, that D. Carson is not in any way in fault

and not liable for any part of the damage, it being one of those things which human wisdom could not foresee.

SAMUEL HARRIS,

JOHN NANT,

JAMES CURLEY."

From this we understand the arbitrators as intending to say, in effect, that the wall which fell was to remain, and was supposed by all parties to be good and sufficient to support all the weight for which it was intended; that the external appearance of it indicated no unsoundness or imperfection, but by the fall the internal defectiveness of the structure became manifest, although previously concealed from human observation; that the damage resulted from such concealed defect which caused the falling of the wall; and as that wall, by agreement, was not to be taken down, but to stand as it was, the arbitrators came to the conclusion that Carson was not in fault and not liable for the damage.

Whether the old wall, by contract, was to stand, and whether its external appearance exhibited such a state of soundness as to indicate its entire sufficiency to sustain the weight designed to be placed upon it, disclosing no evidence of any internal defect whatever, the parties supposing it good and sufficient for what it was intended; and whether the falling of the wall was caused by its concealed defect, and not a want of proper care or skill, in the manner of placing the iron columns upon it, were matters in regard to which the conclusions of the arbitrators were formed from the evidence, in connection with their own personal observation. From the nature and character of the circumstances presented for consideration and decision by the referees, if they committed errors or mistakes in their conclusions upon the facts, they were mere errors of judgment, and not gross mistakes which could defeat the award. It is not every error or mistake which can avail for such a purpose. On the contrary, by a long course of decisions, courts have manifested a strong inclination to sustain the judgments pronounced by arbitrators. Mistakes committed by them in drawing incorrect inferences, or forming erroneous judgments or conclusions, from facts, will not vitiate their

awards; but when mistakes are relied upon for that purpose they must be gross and manifest. In *Knox vs. Symmonds*, 1 *Ves., Jr.*, 369, where the court, from the character of the proceeding, were at liberty to look, not only to the award, but also to the evidence *aliunde*, Lord Thurlow says: "To induce the court to interfere there must be something more than an error of judgment, such as corruption in the arbitrators, or gross mistake, either apparent on the face of the award or to be made out by evidence; but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened he should have made a different award." This remark is quoted with approbation in *Burchell vs. Marsh, et al.*, 17 *How.*, 344. And in that case the Supreme Court also say: "Courts should be careful to avoid a wrong use of the word 'mistake,' and by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards."

From its peculiar applicability to the subject before us we are induced to make a quotation from the opinion of Ch. Justice Shaw, in *Boston Water Power Co. vs. Gray*, 6 *Metcalf*, 181, where he says: "The mistake or accident, therefore, must be of some fact which deceived and misled the arbitrators, and not a mistake in drawing conclusions of fact from evidence or observation." That mistakes which are but errors of judgment will not invalidate awards, may be seen by reference to *Cromwell vs. Owings*, 6 *H. & J.*, 10, and *Ebert's Exc'rs vs. Ebert's Adm'rs*, 5 *Md. Rep.*, 353. And in delivering the opinion of the court in *Goldsmith vs. Tilly*, 1 *H. & J.*, 364, Ch. J. Chase says: "The court will not unravel the matter and examine into the *justice* and *reasonableness* of what is awarded."

Without meaning to say whether we should have drawn the conclusions which the referees did, we feel no hesitation in saying, that after looking, not only to the award, but also to the proof in the cause, we see no just reason for supposing they did not believe they were doing what justice demanded of them. And in *Burchell vs. Marsh, et al.*, where the award was open to a full examination, under a bill in equity, filed

Roloson vs. Carson.

for the purpose of setting it aside, the court use this language: "If the award is within the submission and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either of law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation."

The plaintiff's second prayer, but the first stated in the record, is: "If the jury find from the evidence that the award read in evidence was made, written and subscribed by the arbitrators, at a meeting at which plaintiff did not attend and of which no notice was given to him, the plaintiff, then the said award is no bar to a recovery in this case, unless the jury are further satisfied from the evidence that the said award, after being notified to the plaintiff, was acquiesced in and assented to by him."

If the law of this prayer is correct, then an award is void, unless ratified after notice of it is given, provided the party opposed to it is not present at, or notified of, the final meeting of the arbitrators, held simply for the purpose of making their decision, writing out and signing their award, although they may have previously heard all the allegations of the parties and examined all the evidence. When jurors retire to their chamber for the purpose of forming a verdict the parties are excluded, so that there may be a free and unbiassed deliberation as to what the verdict ought to be. Why have not arbitrators the same privilege of secret consultation and interchange of views, in regard to their final decision of the matters submitted to them? Impartial justice requires it should be so. If then arbitrators must be allowed the privilege of consultation, in private, for the purpose of making their award, what possible benefit can result from requiring the parties to have notice or knowledge of such an intended meeting? Not considering it necessary the parties should have notice of, or be present at, a meeting of that description, we think the court did right in refusing the prayer.

The third prayer assumes the award to be void in conse-

quence of the arbitrators having read the defendant's affidavit without previous notice to the plaintiff, and in his absence, even if the jury believed the affidavit had *no influence* on the minds of the arbitrators. The prayer is in the alternative, "although the jury may believe that the said affidavit had little or no influence on the minds of the arbitrators," and therefore if the instruction had been given the jury would have been justified in deciding against the award, on account of the affidavit being read, although they believed it produced *no effect* upon the decision of the referees. That would be allowing an award to be defeated for what is known to have exerted neither beneficial nor injurious influence on the rights of either party. Whilst it might be very proper to set aside an award because the arbitrators had read an *ex-parte* affidavit of this sort, and a court would not consider such an objection to the award as removed, even were the arbitrators to testify that the affidavit had no influence on their decision, still such a principle does not sanction the propriety of a prayer which assumes that the affidavit had no effect upon the award. Such a proposition would be equivalent to saying the mere reading of such a paper will defeat an award, although the parties have agreed that it produced no possible effect.

The proposition stated in the fourth prayer is, that if the jury should find from the evidence the arbitrators were mistaken in the facts, or any of them, recited in the award, as the grounds on which they so awarded, and that without such *mistake* they would not have so decided, then the award is no bar to the plaintiff's claim. After a full consideration of the evidence we see no proof on which such a prayer could be granted: no evidence, in our opinion, legally tending to prove such a gross palpable error or mistake, in any of the facts recited by the arbitrators, as the grounds on which they made their decision, which could defeat the award. If the evidence has any tendency to show mistake, it can amount to nothing more than mistake or error of judgment on the part of the arbitrators, in drawing conclusions or inferences from the evidence and their own observation.

The fifth prayer is: "That the award read in evidence

undertakes to acquit and exonerate the defendant from liability on the ground *alone*, as stated therein, that both parties supposed the stone wall to be good and sufficient, and the same proved defective, which was the cause of the falling of the building, and the award is therefore void for mistake in law, of the arbitrators, appearing on the face of their award, in this, that the facts stated in the award do not, in law, warrant the conclusion, as the arbitrators supposed they did, that the defendant is free from liability to the plaintiff." In the very commencement of this prayer there is an error. Instead of the award undertaking to acquit and exonerate the defendant · from liability, on the ground *alone*, that both parties supposed the wall good and sufficient, and the same proved defective, which caused the falling of the building, the award contains the important statement, that the wall referred to in the prayer "was to remain." Not that the arbitrators thought it was to remain, because both parties supposed it good; but after speaking of the new building, they say, it "fell down, in part, from the fact, that the old stone wall which was to remain, and which wall was supposed by all parties to be good and sufficient to support all the weight for which it was intended, gave way or crushed under the iron columns, which caused the damage." Here it is first said *the wall was to remain*, then follows the statement of the further fact that the wall was supposed by all parties, &c. Moreover, when in conclusion the arbitrators speak of their own observation or examination of the building, and of having heard all the evidence produced in the case, and say "that D. Carson is not in fault and not liable for any part of the damage, it being one of those things · which human wisdom could not foresee," it is evident the award does not undertake to exonerate and acquit the defendant from liability, on the ground *alone* stated in the prayer. Of course it should not have been granted.

By the sixth prayer the court were asked to instruct the jury, "that the paper offered in evidence and purporting to be an award is void for the following reasons:

1st. Because there is a mistake of fact apparent on its face.

2nd. Because there is a mistake of law apparent on its face.

3rd. Because of the improper conduct of the arbitrators.

4th. Because it is not in accordance with the submission as proved by Mr. Harris."

The first reason confines the court to the award itself; and if there is any mistake of fact on its face, we cannot see any which can be considered more than an erroneous judgment or inference. The second reason assumes there is a mistake of law apparent on the face of the award. Whether the court could so instruct the jury must be ascertained by looking to the award itself, without resorting to extrinsic evidence for the purpose of showing a mistake, the assumption being that on its face the award shows it.

We have already stated what we understand to be the meaning of the award in regard to the grounds on which the arbitrators exonerated the defendant from liability, and we think that conclusion upon those grounds was not an error or mistake in law, authorizing the court to instruct the jury that the award is void, because on its face there is an apparent mistake of law. In *Ebert's Exc'rs vs. Ebert's Adm'rs*, it is said: "A more liberal and reasonable interpretation of awards is now adopted by the courts than formerly existed, as to awards. Every reasonable intendment will be made in their favor, and a construction given to them that will support them, if possible, without violating the rules adopted for the construction of instruments." In support of this reference is made to *Caton vs. McTavish*, 10 *G. & J.*, 193. 11 *Law Lib.*, 53, 61, 63.

The third reason relies upon the ground of improper conduct in the arbitrators. The award furnishes no proof of such misconduct, and if any existed it could only have been shown by the evidence. The prayer did not ask the court to inform the jury what facts were sufficient to establish misconduct, leaving the jury to decide whether such facts had been proved; but the court were called upon to say the award was void because of the improper conduct of the arbitration. The granting of such an instruction would have violated the right of the jury to decide questions of fact. In the fourth reason the plaintiff assumed the award to be void, because it was not in accord-

29    v.8

ance with the submission as proved by Mr. Harris. The testimony of this witness was not the only proof in regard to the terms of the submission. Mr. Nant also testified on that subject, and therefore the court were right in refusing to say the award was void because it was not in accordance with the submission as proved by Mr. Harris.

Believing, as we do, the award to have been a good defence against the plaintiff's claim, and that even if the other decisions of the court below, to which exceptions were taken, are erroneous, the case ought not to be sent back under a *procedendo*, it is unnecessary to inquire whether those decisions are correct or not. Indeed we understood the counsel on both sides as agreeing that if the judgment was not reversed upon the plaintiff's prayers in regard to the award, the other questions presented by the record were of no importance so far as this case is concerned. They desired the court, however, to express an opinion upon the question raised by the second bill of exceptions, in regard to the refusal of the court to suspend the examination of the witnesses until the plaintiff's counsel had finished writing his exception.

The act of 1834, ch. 233, sec. 11, provides that bills of exceptions must be signed before the verdict is rendered, if the party requires it. Under this act the court has a discretion as to what time the exceptions shall be either prepared or signed, provided they are completed prior to the verdict; and consequently the action of the court in this instance, in regard to directing the cause to be proceeded in, by the examination of witnesses, against the objection of the plaintiff's counsel, who was writing the exception, we think is not subject to revision on appeal. We will, however, say, that in our opinion, as a general rule, the most appropriate time for, and most likely to avoid delay in, preparing an exception, is, immediately after the decision which is to be excepted to, when the facts are fresh in the recollection of court and counsel, and the witnesses are in attendance, affording an opportunity of re-examination, if a controversy should arise in reference to any portion of the testimony.

*Judgment affirmed.*