# NORTHERN CENTRAL RAILWAY COMPANY *vs.* JOHN BASTIAN.

A railroad company advertised a quantity of old iron rails for sale. The advertisement was signed by its secretary. A party, acting for the plaintiff, who was an iron-broker, called on the secretary in relation to the iron, and was referred to the acting president of the company, who, on being informed that the plaintiff was a broker, and would charge him (the acting president) one per cent. commission on the sale, assented to the charge. The plaintiff then went to the company's office, had an interview with the acting president, disclosed the name of the party wishing to purchase, and informed him that he (the plaintiff) would charge him one per cent. commission, and a sale was subsequently effected through the agency of the plaintiff. In an action by the plaintiff against the company to recover these commissions—HELD:

That these facts furnish evidence from which the jury might find that the acting president of the company was authorized to make the contract for the commissions sued for.

A corporation can act only by its agents, and, in order to bind the corporation, the agency must appear, but this need not be shown by any resolution or other written evidence, but may be implied from facts and circumstances.

The acting president being empowered to sell the iron, it was competent for him to engage the services of the plaintiff, in finding a purchaser and effecting the sale. Such an act, in absence of proof to the contrary, was within the scope of his agency, as a reasonable and proper means of accomplishing the business entrusted to his charge.

APPEAL from the Court of Common Pleas.

This action was brought by the appellee against the appellant on the 24th of December 1856, to recover the value of services alleged to have been rendered by the plaintiff to the defendant, as its agent and broker, in effecting the sale of a quantity of old railroad iron belonging to the defendant. Plea, not indebted as alleged.

*Exception.* After the evidence, which, for the purposes of this case, is sufficiently stated in the opinion of this court, was closed, the defendant offered four prayers, in substance as follows:

1st. That there is no evidence, competent to go to the jury, to show that R. M. Magraw was authorized by the defendant to employ the plaintiff, or any one else, as a broker, to sell

Northern Central Railway Co. *vs.* Bastian.

for the defendant the iron spoken of in the evidence, or that said Magraw was authorized by the defendant to pay, or promise to pay, the plaintiff, or any one else, any commission for the sale, or procuring the sale, of said iron, and, in the absence of any such evidence the plaintiff is not entitled to recover.

2nd. That the plaintiff is not entitled to recover in this action, unless the jury shall find from the evidence that the defendant either employed the plaintiff to render the services for which this suit is brought, or promised to pay him for them.

3rd. That though the jury may find that Mr. Magraw was the acting president of the defendant at the time of the conversation between him and the witness Robbins, as testified to by the latter, and that this conversation took place as stated by this witness, yet the plaintiff is not entitled to recover, unless the jury shall also be satisfied, from the evidence, that the defendant authorized said Magraw to promise, or undertake for it, that it would pay to the plaintiff the compensation for which the suit is brought, or ratified or adopted the agreement, if they should find any such, of said Magraw, so acting as president, with the plaintiff.

4th. If the jury believe, from the evidence, that the plaintiff was acting as agent for the Montour Iron Company, in effecting a sale to them of the defendant's iron, then it was a fraud upon said company, to act for and accept a compensation from the defendant in that transaction, and he is not entitled to recover in this action any such compensation from the defendant, unless the jury further find that such acting for and agreement to compensate by the defendant, was known to and acquiesced in by the said Montour Iron Company.

The court (MARSHALL, J.) granted the second and third, and rejected the *first* and *fourth* of these prayers, and to this rejection the defendant excepted. The verdict and judgment were in favor of the plaintiff for $419.33, and the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Bernard Carter*, and *J. Mason Campbell*, for the appellant:

1st. So far as the evidence shows, it appears that Hollins, the secretary of the defendant, was the officer of the corporation to whom the corporation had entrusted all matters relating to the sale of the iron. The advertisement, as published in the newspaper, and which was the source of the plaintiff's information, that this iron was for sale, expressly directed purchasers to Hollins, the secretary, and it was this officer who signed, on the part of the defendant, the contract of sale which was finally entered into with the Montour Iron Company. It appears, however, that Magraw was at the time of this transaction the acting president of the defendant. Had he any power by virtue alone of his office to employ the plaintiff on behalf of the company and bind the latter to pay for his services? We submit, he had no such power. The Act of 1854, ch. 250, (the charter of the defendant,) confirms the original Act of 1827, ch. 72, the 12th sec. of which declares, the *"President and directors,* or a majority of them, may appoint all such officers, engineers, agents or servants, whatsoever, as they may deem necessary for the transaction of the business of the company, and may remove any of them at their pleasure; that they, or a majority of them, shall have power to determine, by contract, the *compensation* of all the engineers, officers, agents or servants in the employ of said company." Now if the plaintiff is to be considered as employed by the defendant, it must be as an agent or servant; the charter has, in express words, entrusted the appointment of all its agents and servants to the president *and* directors. How, in the face of this can it be pretended that Magraw, as acting president, without a word said to the directors, had the power to employ the plaintiff, and at a rate of compensation fixed by himself? There is nothing in the record, or in the charter of the company, to show that Magraw had any power without the action of the directors, to sell any of the property of the company, and without some special authority, or power, given by the charter, or a vote of the corporation, it is clear he had no such power, *virtute*

*officii.* Angell & Ames on Corp., sec. 298. 7 *Grattan,* 352; *Crump vs. U. S. Mining Co.* 14 Mass., 180, *Hollowell & Augusta Bank vs. Hamlin, et al.* 29 Verm., 220, *Hodges vs. Rutland & Burlington Railroad Co.* 36 Maine, 414, *Brown vs. Weymouth.* 2 Ala., 724, *Lazarus vs. Shearer.* 19 *Barb.*; 310, *Soper vs. Buffalo & Rochester Railroad Co.* If he had no power of himself to sell the iron, what better right had he to employ, of his own accord, another person to sell that which he had no power to sell? The *accessory* must be supported without the *principal.* Nor does it appear that Magraw pretended even to settle the terms of the sale of the iron, or to interfere in any way with Hollins in effecting the sale. According to the plaintiff's own showing, all he did was to assent to the charge which Bastian said he meant to make. There is no evidence or pretence that Magraw, or any other president, had ever been in the habit of making such contracts or engagements as this, or that any such power had ever been given by a vote of the corporation, or that the assent of the latter to the exercise of such powers was ever signified by acquiescence. Has the defendant, then, ever *ratified* this engagement of Magraw? There is nothing in the record to show that the corporation ever had any knowledge that Magraw had made any arrangement or engagement of any kind with the plaintiff with reference to the sale of the iron, and still less that it ever had any knowledge of the particulars of this arrangement. There could, therefore, be no ratification. *Story on Agency,* sec. 239. 8 *G. & J.*; 323, *Steam Nav. Co. vs. Dandridge.* 8 *Md. Rep.,* 169, *White vs. Davidson.* 28 *Penn. State Rep.,* 505, *Moore vs. Patterson.* 2 *Md. Rep.,* 63, *Keener vs. Harrod & Brooke.* Hollins expressly states that Bastian's claim was not recognized by the defendant; nor is there any evidence that the corporation ever, in any way, ratified the engagement made by Magraw with the plaintiff. *Story on Agency,* sec. 253. The evidence does not show that Magraw made any engagement for, or on account of, the defendant, to pay the plaintiff commissions, and for this reason, also, no acts of the defendant could amount to a ratification. *Story on Agency,* secs. 251, 258. It being clear

then that Magraw had neither a special nor a general au-. thority from the defendant to employ the plaintiff, or promise to pay him, and that there has been no ratification by the defendant of the acts or engagements of Magraw, it follows that the defendant is not responsible, (*Angell & Ames on Corp.*, sec. 311, and cases cited,) and that its first prayer should have been granted.

2nd. We contend, also, that the defendant's fourth prayer should have been granted, and in support of this view refer to 2 *Story on Agency*, sec. 31; 6 *Pick.*, 204, *Copeland vs. Mercantile Ins. Co.*

*Robert Gilmor, Jr.,* for the appellee:

1st. There was no error in the rejection of the defendant's first prayer. It is well settled that one may be the agent of a corporation, so as to bind it by his acts in a particular transaction, by implication from the facts and circumstances of the transaction, and the acts of the parties to it, without showing such agent to have been appointed under the corporate seal, or giving proof that he has been appointed or elected by actual vote. 12 *Wheat.*, 64, *Bank of U. S. vs. Dandridge.* 1 *H. & G.*, 324, *Union Bank vs. Ridgely.* 2 *Gill*, 254, *Burgess vs. Pue.* The evidence in this case was admissible to go to the jury to raise such implication. 2 *G. & J.*, 404, *Davis vs. Barney.* 4 *H. & J.*, 516, *Burt vs. Gwinn.* If, then, such agency may be found by implication, and, as is contended, the evidence is admissible to go to the jury, by its tendency to show the express purpose of the corporation to sell the iron, and the course they pursued, as furnishing presumption that by permitting and assenting to the act by which was carried out that purpose, they intended and provided for no other means by which it should be done, the implication might have been, in the opinion of the jury, that the corporation had thereby made Magraw their agent as to the plaintiff, and the principle would have applied, that the acts and contracts of an agent, within the scope of his authority, would be binding on the corporation, a principle well established,

and which would render Magraw's employment of the plaintiff, under the circumstances, binding on the company, provided this was an act that came regularly and legitimately within the scope of his authority as such agent, which also was a question for the jury, and which was taken away by this prayer. Again, by acquiescing in it, it is insisted the company adopted Magraw's act, and this is equal to authority, and was a question for the jury. It cannot, in right and justice, be permitted the defendant to accept the contract in such respects as it is beneficial, and reject its obligation or throw off its yoke. It is not contended that Magraw had any power to sell the iron and retain the plaintiff's services, as president of the corporation, *virtute officii*, but that, by all the acts of the corporation, there was a fair and reasonable implication that, as to the plaintiff, they had set Magraw up as their agent in this particular, and that they must, therefore, be bound by his acts.

2nd. As to the second prayer. If the principle asserted by it were conceded to be correct, there is no sufficient foundation in the evidence for it or the facts on which it proceeds. It therefore asserts an abstract principle. The law never presumes illegality, and presumptions will be made to uphold the validity of a transaction until the contrary is *proved*. At best, there would be but a conflict of presumptions where the presumption of innocence must prevail.

BARTOL, J., delivered the opinion of this court:

At the trial of this action in the court below, the defendant, the present appellant, offered four prayers, of which the second and third were granted, and the first and fourth refused. The defendant excepted, and by this appeal, has brought before us for review, the ruling of the court upon the first and fourth prayers.

The suit was brought to recover a sum of money alleged to be due from the appellant to the appellee, for services rendered by the latter in his capacity of iron broker, in the sale of a quantity of old railroad iron belonging to the appellant. The contract upon which the plaintiff relies, is alleged to

have been made with him by Mr. Magraw, the acting presi-
dent of the railroad company. The verdict and judgment
were in favor of the plaintiff; and the appellant asks a rever-
sal, on the ground that there was no evidence competent to
go to the jury, to show that the acting president was author-
ized by the defendant to employ the plaintiff, or to agree to
pay him for his services. This question is presented by the
first prayer; and, in deciding it, we must assume that the act-
ing president of the company did employ the plaintiff, and
agree to pay him the compensation claimed, those facts
having been found by the jury, and no question being raised
by the prayer, except as to the legal sufficiency of the evi-
dence to go to the jury for the purpose of showing the author-
ity of the acting president to bind the company in the trans-
action. To determine this question, it is necessary to advert
to the evidence, which was substantially as follows:

In April 1856, the railroad company caused an advertise-
ment to be published in the newspapers, offering for sale
about 800 tons of old T rails, which was signed by Robert
S. Hollins, the Secretary of the company. Mr. Robbins, of
Baltimore, who was acting for the plaintiff, an iron broker,
residing in Philadelphia, called on Mr. Hollins in relation to
the iron, inquired the price, &c., and informed him for whom
he, Robbins, was acting, and was referred by Mr. Hollins to
Mr. Magraw, the acting president of the company, who, ac-
cording to Mr. Robbin's testimony, upon being informed that
the plaintiff was acting as a broker, and was purchasing the
iron for a party in Philadelphia, and that the plaintiff would
charge him (Magraw) one *per cent.* commission on the sale
of the iron, assented to the charge. It was further testified
by Mr. Robbins, that the plaintiff visited Baltimore, went
with witness to the office of the appellant, had an interview
with Mr. Magraw, disclosed to him the name of the party
wishing to buy the iron, and informed him that he, the plain-
tiff, would charge him one *per cent.* commission. Afterwards
the plaintiff paid a second visit to Baltimore, when, through
his agency, a sale was effected, and, on the 21st of June 1856,
the contract of sale of 1000 tons of iron was made and con-
cluded between the appellant and the Montour Iron Com-

Northern Central Railway Co. *vs.* Bastian.

pany. When the contract of sale was reduced to writing, and signed by the secretary of the appellant, it was delivered to the witness, Robbins, who sent it to the plaintiff, in Philadelphia, to procure the signature of the Montour Iron Company, and the same was, in a few days, returned by mail to witness, who delivered it to Mr. Hollins, the secretary of the appellant.

Looking at the facts and circumstances disclosed in the proof, as we have briefly stated them, we think they furnish evidence from which the jury might find that Mr. Magraw, the acting president, was authorized to make the contract sued on. A corporation can act only by its agent, and, in order to bind the corporation, the agency must appear. This need not be shown by any resolution of the board, or other written evidence; it may be implied from facts and circumstances. 5 *Md. Rep.*, 152.

In this case there is no question but that the offer of the iron for sale was the act of the railroad company.

According to the argument of the appellant, Mr. Hollins, the secretary, was the agent to effect the sale. But the evidence shows that when he was called on in reference to the matter, Mr. Hollins referred the party to Mr. Magraw, the acting president, as the person empowered to act for the company. The only agency which Mr. Hollins appears to have had in the business afterwards, was to sign the written contract of sale. If Mr. Magraw was empowered to effect the sale of the iron, and, in our opinion, there was evidence tending to prove that fact, then it was competent for him to engage the services of the plaintiff to aid in finding a purchaser and bringing about the sale. Such an act, in the absence of proof to the contrary, was within the scope of his agency, as a reasonable and proper means of accomplishing the business entrusted to his charge. We think, therefore, the first prayer of the appellant was properly refused.

We concur, also, in the ruling of the court below on the appellant's fourth prayer. There was no evidence to establish any fraud on the part of the plaintiff, in the transaction.

*Judgment affirmed.*

(Decided May 16th, 1860.)