THE MARYLAND AND DELAWARE RAIL ROAD COMPANY *vs.* JOHN PORTER.

In an action upon an award, the defendants being an incorporated Rail Road Company, an agreement of submission to arbitration by the plaintiff and defendants, as a subsisting obligation, being in evidence without objection, both parties having joined in a request to one of the witnesses to write an award already determined on by the referees, and the defendants having offered a series of prayers assuming, as a matter of fact, said agreement to be an existing contract between the parties, the objection subsequently made, that the authority of the President of said Company to sign said agreement, was not submitted to the jury as a distinct fact, comes too late.

The exclusion from a prayer of a fact necessary and material to support the instruction sought, constitutes an objection not less fatal than would be the assumption of the same fact.

Where a fact constituted of several distinct elements or parts, is clearly submitted, and the finding of it by the jury necessarily implies a consideration of the several parts, the failure to enumerate them in the prayer, cannot be considered a substantial ground of objection.

Agreements made to compose and settle controversies by arbitration, are favorably regarded in Courts of Law, and awards made by virtue of such agreements, are liberally, and if possible, so construed as to make them effective.

Where an agreement to submit to arbitration, was "for the purpose of ascertaining the amount of damages or compensation to be paid by the defend-

ants for any injury or loss the plaintiff *may sustain*," an award for *damages actually sustained*, will be considered within the terms of the submission.

Although it may generally be necessary to submit the question of notice, as a fact, to the jury, to entitle one claiming upon an award to recover, it is not so in a case where that necessity is avoided by an express agreement, or where the parties themselves make the appointment of the time and place for hearing before the arbitrators.

APPEAL from the Circuit Court for Talbot county.

This was an action brought on the 11th of May 1857, by the appellants against the appellee, upon an *award* purporting to be made in pursuance of an agreement of the parties, directing the defendants below to pay to the plaintiff the sum of $167.25, for damages done to the lands in the occupancy of the plaintiff, as tenant, in consequence of the construction of the defendants' rail road through and over the said lands, as the line of the said road is now located.

The agreement referred to, made December the 31st, 1856, was as follows:

It is agreed between John Porter and the Md. and Del. R. R. Co., for the purpose of ascertaining the amount of damage or compensation to be paid by the said company to the said Porter, for any injury or loss which said Porter may sustain by reason of said road passing through the farm rented of Elizabeth G. Loveday, as guardian of William N. Loveday, by said Porter, that the same shall be settled by reference upon the following terms, viz.:

1. Each of the said parties shall select a disinterested gentleman, and those two shall select a third, to be the referees, the award and finding of any two of said referees to be final.

2. The gentlemen as above to be selected, shall have power and authority to examine witnesses at the request of either party, and to view the line of said road at their pleasure.

3. The said referees shall make out an award under their hands and seals, or under the hands and seals of any two of them, and deliver a copy thereof to each of said parties.

4. The referees shall meet at some convenient place, upon ten days *ex parte* notice, and proceed to the investigation of the subject hereinbefore referred to them, giving notice to each party of the time.

5. The damage or compensation awarded to said Porter, if any, shall be paid or satisfied on the return of the award.

In pursuance of this agreement, William Hayward was selected as referee by the plaintiff, and Nicholas Willis by the defendants, James Bartlett being the third selected by first two referees.

The following award was made on the 3rd of January 1857, by the referees, Hayward and Willis:

Whereas we, William Hayward and Nicholas Willis, of Talbot county, were selected and appointed by the said John Porter and the Maryland and Delaware Rail Road Company, by an agreement entered into by the said parties, which agreement is hereby referred to, and is hereunto attached, to award and determine the matters and things in controversy between the said parties, as mentioned in the said agreement, being the amount of damages and compensation to be paid to the said John Porter by the said Maryland and Delaware Rail Road Company, for injury done to the lands now in the occupancy of the said John Porter, as the tenant of Elizabeth G. Loveday, the guardian of William N. Loveday, a minor, in consequence of the construction of the road of the said company through and over the said lands, as the line of the said road is at present located, having taken upon us the arbitrament and determination of the matters referred to us by the said agreement of the said parties, having heard the allegations

of the said parties, and having deliberately considered thereof, do make this our award upon and concerning all and singular the matters and things referred to us in manner following, viz.: We award and value the damage done to the growing crop of wheat of the said John Porter, on two and a quarter acres of land within the limits of the said road as located, at the sum of sixty-three dollars and seventy-five cents, the straw on the same land at four dollars, the value of the damage done to the pasturage on three acres, two roods and twenty-eight perches, occupied by the bed of said road as at present located, at the sum of twelve dollars, the value of the damage done to one-quarter of an acre of land on which wheat is growing, and which is not within the lines of the said road, but which is to be used to furnish earth for the embankment necessary for the construction of the said road, at the sum of seven dollars and fifty cents, and the value of the damages consequent to the passage of the said road through and over the said lands, at the sum of eight dollars; making the amount of the valuation of damages done to the said John Porter, at the sum of one hundred and sixty-seven dollars and twenty-five cents. And we do award and determine that the Maryland and Delaware Rail Road Company pay to the said John Porter the said sum of one hundred and sixty-seven dollars and twenty-five cents, as a compensation due to him on account of the valuation of the damage sustained by him, as hereinbefore mentioned. In witness whereof, we do hereunto set our hands and affix our seals, this 3rd day of January, in the year eighteen hundred and fifty-seven.

WILLIAM HAYWARD, (Seal.)
NICHOLAS WILLIS, (Seal.)

Pleas were filed, some of which were demurred to and subsequently withdrawn, and the case was tried upon issues joined on the pleas of the defendants: 1st. "That they are not indebted as alleged." 2nd. "That they did not agree

as alleged." 3rd. "That the award is not within the terms of the submission."

In the course of the trial, seven exceptions were taken by the defendants, but this Court having based their opinion upon the decision of the questions arising on the defendants' 3rd exception, without passing upon the other exceptions, they are here omitted, with the arguments of counsel relating thereto.

*3rd Exception.* The plaintiff having offered in evidence and proved the signatures to the aforegoing agreement and award, and having further offered evidence "that a copy of the award was left by the referees at the office of the defendants on the day it was signed;" the defendants then, to prove the issues on their part, re-called Richard C. Hollyday, who proved that the award was written by him, at the request of the arbitrators and *the parties to this suit*, on the night after the arbitrators had met and determined on the award, at his own house, and brought into Easton on the following morning, to be signed by the arbitrators. That before the paper was presented to the arbitrators, he carried the draft of the award to the office of Samuel Hambleton, one of the counsel for defendants, for his inspection. That the said Hambleton, after reading the said draft, requested witness to add thereto a memorandum, that the damages mentioned in said draft were not to be paid by defendants unless they worked on the said lands, or words to that effect. That witness stated he had not the terms of reference between the parties with him, that he would make the memorandum desired, and if, upon examination, the memorandum was found to be consistent with the terms of reference, it should stand, otherwise it should be erased. That witness then added the memorandum at the close of the draft of award in these words, "Memorandum, if the rail road is not worked on the land mentioned, then the award is not to be paid;" in the office and in the presence

of the said Hambleton. That after leaving the said Hambleton, upon examination of the terms of reference, witness considering said memorandum inconsistent therewith, erased the same by passing his pen through it, as it now appears on the original paper. That this erasure was made before the draft was handed to the arbitrators for their signature, and before they had seen the paper. That witness never communicated the fact of the erasure of the said memorandum to said Hambleton or the defendants, but delivered the draft thus erased to one of the arbitrators, or to Mr. Martin, one of the counsel for the plaintiff.

The plaintiff further proved by William Hayward, that the said draft of award was handed to him, as one of the arbitrators, by R. C. Hollyday, having the erasure already made upon it, before it was delivered, but did not know what was erased, and never had his attention called to the terms of the memorandum.

The defendants further produced Melville Sherwood, a competent witness, by whom they proved that he was one of the engineers who surveyed the line of the rail road for defendants, and knew the time the arbitration took place between plaintiff and defendants. That prior to said arbitration, nothing had been done by the defendants, except to survey and mark the line of their road through the premises occupied by the plaintiff.

The defendants then produced Charles Rathell, a competent witness, by whom they offered to prove that he knew the premises occupied by John Porter, as tenant of Mrs. E. G. Loveday, and also about the time the defendants surveyed and laid out the line of their road through the same, that he also knew of said plaintiff reaping the wheat upon said entire field. That he was in the said field just before the said wheat was reaped by plaintiff, and on previous occasions, and knew where the said line of road passed through it. That there was no perceptible difference in

the crop on said line of road, from any other portion of the field, and the whole was reaped by the plaintiff; and further, that he knew that the plaintiff used and enjoyed the pasture on the wheat field through which the line of said road was surveyed, and also the other pasture field through which the road was located. That the line of the road was marked by pegs about — inches high, some higher, tipped with red; that at the time the wheat was reaped, these could not be seen, and that he could not trace the line of the road; that there was no fence put up by the defendants on either side of the line as marked ·out, and nothing to keep the stock of the plaintiff off, after the wheat was reaped by him, and that the stock could not be put in the field without going on the line of the road.

The defendants, further to prove the issues on their part, produced Charles Robinson, a competent witness, by whom they offered to prove that he had often heard the plaintiff say, both before and after the institution of this suit, that if the defendants would pay the costs and expenses of the arbitration, together with his counsel fees, he would waive all claim to the award, otherwise he would enforce the award for the whole amount. That he had heard the said plaintiff say, that he had proposed this to defendants, and they refused to accept the proposition, and he meant to make them pay the whole amount; the plaintiff had frequently told him since the suit, that he had made this proposition to the company, but witness does not know whether the proposition was made before the suit was brought, or after.

The defendants, further to prove the issues on their part, re-called Nicholas Willis, one of the arbitrators, by whom they offered to prove, that at the time the award was made, no damages had been done to plaintiff, that witness discovered, although he and the other arbitrators walked over the line of the road, and no damages were valued by him

for any injury already done; that he looked entirely, in making the award, to damages that might be done by the construction of the defendants' road over the premises occupied by the plaintiff, and that the defendants were to pay the money to the plaintiff on the return of the award, and before they began work upon the premises occupied by plaintiff; that the award was so made upon the understanding which he had, that the location of the road was fixed, and that the defendants intended to proceed immediately with the construction of the road over the premises of the plaintiff.

The plaintiff thereupon prayed the following instruction from the Court:

"The Court instruct the jury, that if they believe from the evidence in the cause, that the defendants signed and executed the agreement bearing date 31st December 1856, and that pursuant to said agreement, the referees therein chosen made their award, bearing date the 3rd of January 1857, and that a copy of said award was furnished to each of said parties, and the money awarded to the plaintiff has not been paid, then they must find for the plaintiff." This instruction the Court gave to the jury; to which ruling of the Court the defendants, by their counsel, objected, and said objection being overruled, they excepted, and took an appeal to this Court.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*E. F. Chambers,* for the appellants:

1st. The appellants were not parties to the agreement or submission, and not bound by the act of T. Tilghman, who subscribed the agreement. *Tomlin vs. Mayor, &c., of Fordwich, 6 Nev. & Man.,* 594. *Russell on Arb. & Awards,* 28, 29.

2nd. The agreement required the action of three referees,

one of whom did not act, and does not appear to have had notice to act. *Russell on Arb. & Awards*, 210 and 211.

3rd. The award is not pursuant to or authorized by the agreement, inasmuch as the award is for damages actually sustained, and the agreement respects only damages thereafter to be sustained.

4th. If the defendants were made parties to the submission by the signature of T. Tilghman, then the charter of the company should have been regarded in the investigation of the nature and obligation of the submission and award.

5th. For other grounds on which the award should have been set aside, see *Russell on Arb. & Awards*, 299, 300 and 308. *Watson on Arb.*, 208.

*O. Miller*, for the appellee:

1st. The main question in the case is, whether this award was within the terms of the submission? This is, in ordinary cases, a question of law, to be decided by the Court, upon the construction of the two instruments,—the submission and the award. By a long series of decisions in this State, it has been decided, that in construing awards, they are entitled to the most favorable consideration, and should receive such construction, if possible, as will give them force and effect; that every reasonable intendment is now made in their favor; that the arbitrators have not exceeded their powers, and that all matters have been decided by them, unless the contrary shall appear from the face of the award. 10 *G. & J.*, 193, *Caton vs. McTavish.* 5 *Gill*, 129, *Lewis vs. Burgess.* 5 *Md. Rep.*, 354, *Ebert vs. Ebert.* 8 *Md. Rep.*, 208, *Roloson vs. Carson.*

2nd. Upon the return of the award, the right of action thereon vested, it was then final and conclusive on the parties. Suppose that the next day suit had been brought, could the defendants have interposed the objection, that

the road was not built over the land, or that the arbitrators intended the defendants should not pay unless they worked the road? If not, how can a subsequent abandonment of this location of their road, exempt them from the obligation of their bond, thus solemnly entered into? Looking to the terms of submission, it mattered not whether the award spoke of damages to be sustained, or as actually sustained; in either case the sum awarded was to be paid at the same time. With this stipulation as to the time of payment, before the arbitrators, the award properly spoke of the damage as done and sustained, and directed payment of the sum awarded. It is submitted, therefore, that this award is within the submission, and is final and conclusive upon the parties. 12 *G. & J.*, 456, *State vs. Stewart & Gross.* 6 *H. & J.*, 10, *Cromwell vs. Owings. Russell on Arb. & Awards, marg. pages* 245, 246, 260, 261, 262, 299, 301, 302, 304, 305, 308, 455, 473, 510. But in this case, the parties, by their pleadings, have left the question, whether the award is within the terms of the submission, to the jury; they have made it a question of *fact*, and not of *law*.

COCHRAN, J., delivered the opinion of this Court:

This is an appeal from a judgment obtained by the appellee, in a suit instituted on an award, by which the appellant was directed to pay the sum of $167.25 to the appellee, as a compensation for certain damages to lands in his possession.

It appears that the appellant, after having surveyed and located the line of its proposed road through lands rented to and in the occupancy of the appellee, entered into an alleged written agreement with him, to submit the matter of his damages to arbitration. By this agreement, the parties fixed the mode of appointing and number of the referees, any two of whom were declared competent to

make an award that should be final. Under this agreement arbitrators were appointed, two of whom made and returned the award upon which this suit was brought. At the trial, the appellant reserved several bills of exceptions, the 3rd of which, taken to the granting of the appellee's 1st prayer, presents the leading question in the case. On that exception we are to determine whether, upon the facts enumerated in the prayer, and the true construction of the agreement and award, the appellee was entitled to the instruction granted. The prayer was objected to on the ground that it did not include and present, as a distinct fact to be found by the jury, the authority of Tilghman to make the appellant a party to the agreement, by his execution of it as the appellant's agent. The exclusion from a prayer of a fact necessary and material to support the instruction sought, constitutes an objection not less fatal than would be the assumption of the same fact, for in either case the tendency is to force a verdict on facts, the finding of which is taken from the jury. That objection does not present itself, however, when the exclusion or omission is only of some element or constituent part of a fact, the finding of which, as a whole, is properly left to the jury. When a fact, constituted of several distinct elements or parts, is clearly submitted, and the finding of it by the jury necessarily implies a consideration of the several parts, the failure to enumerate them in the prayer, cannot be considered a substantial ground of objection. In this prayer, the execution of the agreement by the appellant was clearly and definitely presented as a fact to be found by the jury, and in finding it, they were bound to consider and find Tilghman's relations to and authority from the appellant, to bind it by his signature. As a body corporate, the appellant could enter into agreements only through the medium of authorized officers and agents, and the question of fact, as to its execution of the agreement

in this case, involved a consideration and finding of the authority by which it was made. Proof of an express authority to Tilghman, was not necessary for considering that fact as a necessary element of a valid execution of the agreement, the jury were at liberty to find it from the circumstances and acts of the parties; and as this case was presented, we cannot say that no evidence was offered from which the jury could conclude that the proper authority was granted. *Northern Cen. R. R. Co. vs. Bastian*, 15 *Md. Rep.*, 494.

As the jury could not find that the agreement was executed by the appellant, without finding that Tilghman, as its agent, had authority to sign it, the objection would seem to have no foundation. We do not, however, determine the objection to be immaterial on this ground alone, as a consideration of it, in another aspect of the case, leads to the same conclusion. The agreement in question was not only offered in evidence, as a subsisting obligation between the parties, without objection, but the appellant proved by the witness, Holliday, that the parties joined in the request that he, the witness, would write the award determined on by the arbitrators, by virtue of the agreement. The appellant also offered a series of prayers, and in the 1st and 2nd of them assumes, as a matter of fact not left to the jury, the agreement to be an existing contract between the parties. Considering the agreement in connection with the evidence thus offered, and the assumption of it as a fact in the appellant's prayers, the objection that Tilghman's authority to sign it was not submitted as a distinct fact to be found by the jury, came too late, for as the case then stood, the jury were at liberty to find, without considering the fact of that authority, that the appellant was, by adoption, if not otherwise, actually a party to the agreement.

Having disposed of the objection, that the instruction

contained in the prayer was granted upon a hypothesis insufficient in its facts, we have next to consider whether the award offered in evidence was made within the terms of the agreement of submission. The chief objection to the award, urged in the argument of the case, was that the sum ascertained by it was awarded as a compensation for damages *sustained*, it having been contended, as a part of the proposition, that by the terms of the submission, the arbitrators were authorized to ascertain and award only for such injury and loss as should result to the appellee by making the appellant's road as then located, and that evidence offered to show that the road was not made as then located, and that the appellee suffered no injury, ought to have been considered. This objection finds its entire support in what we conceive to be a very strict, if not forced, construction of the agreement of submission. The appellant undoubtedly entered into that agreement with the fully determined purpose of making the road as then located, and in view of that purpose, the damages to be ascertained by the arbitrators could not have been contemplated by either party as contingent on, or as awaiting the actual execution of that purpose by the appellant. The agreement provided, that the amount of damage to be paid to the appellee for the injury or loss he might sustain by making the road as located, should be ascertained and settled by a reference to three persons, any two of whom were declared competent to make a final award, and that the damage or compensation that might be awarded, should be paid or satisfied on the return of the award. It should be observed, that agreements like this, made to compose and settle controversies by arbitration, are favorably regarded in Courts of Law, and that awards made by virtue of such agreements, are liberally, and if possible, so construed as to make them effective. *Cromwell vs. Owings,* 6 *H. & J.,* 10. *Ebert's Exrs. vs. Ebert's Admrs.,* 5 *Md. Rep.,* 353.

*Roloson vs. Carson*, 8 *Md. Rep.*, 208. Construing this agreement in the light of these authorities, and so that all its parts may have effect, it is clear that the damages to be ascertained were to be considered as already done. Upon the return of the award, the sum ascertained and awarded was to be, and thereby became, a present subsisting debt, due from the appellant to the appellee, independent of, and unaffected by, any change in the location of the road subsequently made. In our opinion, there is no provision in the agreement inconsistent with this construction, nor is there any from which there can be a contrary implication. Upon this construction of the agreement of submission, the award is not open to the objection taken, as it determined only what the agreement contemplated and authorized, and that, in the apt and proper terms, necessary to give the award itself the present actionable character designed by the parties to the agreement.

The instruction in the 3rd exception was also objected to, on the ground that it authorized the finding of a verdict for the appellee, without finding that notice was given by the arbitrators to the parties, of the time when they proceeded to consider the matter submitted to them. The case of *Bullitt vs. Musgrave*, 3 *Gill*, 31, was relied on in support of this objection, but we think that authority does not apply here. Although it may generally be necessary to submit the question of notice as a fact for the jury, to entitle one claiming upon an award to recover, it is not so in a case where that necessity is avoided by an express agreement, or where the parties, themselves, make the appointment of the time and place for hearing before the arbitrators. In connection with, or upon the agreement of submission in this case, is a memorandum of the persons appointed as the arbitrators, and also of an agreement in these words: *"It is agreed by the within named parties, that the referees shall meet at the Md. & Del. R. R. Co's*

*office, on Friday next, the 2nd of January* 1857, *at* 9 *o'clock,
A. M."* Holliday's evidence, in connection with the date
of the award, shows that the parties were present with the
arbitrators on that day, they having joined in the request
that he should write the award then agreed on, which he
did that night. The effect of the agreement for the time
and place of meeting, operated as a waiver of the notice
called for by the agreement of submission, and as it is
shown that the parties were present with the arbitrators
on the day appointed, and joined in procuring the service
of the witness, Holliday, in writing the award determined
on at that time, the question of notice cannot be a material
one. We think, therefore, that the Court did not err in
granting the instruction excepted to, and that the jury
were authorized to find that the award was made in pur-
suance of the agreement of submission, without regard to
the notice provided for by it.

Being of opinion that a determination of the questions
raised by the other exceptions, will not change the result
already ascertained by the consideration of the 3rd, we
shall forbear an expression of our views upon them, and
affirm the judgment.

*Judgment affirmed.*

(Decided March 26th, 1863.)