## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* ALLIED CONTRACTORS, INC.

[No. 53, September Term, 1964.]

*Decided November 16, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Nelson B. Seidman* and *James B. Murphy, Assistant City Solicitors,* with whom was *Ambrose T. Hartman, Acting City Solicitor,* on the brief, for appellant.

*W. Hamilton Whiteford* for appellee.

HAMMOND, J., delivered the opinion of the Court.

This case comes to us confused by the granting below of a summary judgment after two days of testimony on the issues on which the parties differed, but as we see it the points on which the decision must turn are (a) whether the determina-

tion by the Director of Public Works of Baltimore that a specified number of dollars was due the appellee, Allied Contractors, Inc., for extra work and expense caused by the City during performance of a construction contract was made by him under the contract provisions that:

> "To prevent disputes and litigations, the Director will be the referee in case any question shall arise between the Contractor and the City touching the Contract, and his determination, decision and/or estimate shall be final and conclusive upon the Contractor, and shall also be a condition precedent to the right of the Contractor to receive any moneys under the Contract"

and (b) if so, whether the City was finally bound by the determination or could, as it attempted to do, repudiate the determination and tender a lesser sum in full settlement.

Allied was awarded the contract for the erection of a bridge over Northern Parkway by the City in June 1958. Due to a change in plans, notice to proceed was not given until November. Claiming damages and extra costs of $104,266.26 because of this delay and other reasons attributed to the City—such as extra work, additional costs of winter concreting, changes in construction procedures, added costs of a structural steel assessed to Allied by its suppliers because delivery was delayed, and the cost of rebuilding forms that had been made unusable Allied made demand for payment of this sum upon the City. In March 1961, apparently pursuant to a suggestion by the consulting engineers, J. E. Greiner and Co., Allied submitted a written detailed summary of its claims to the City's highways engineer, Walters, sending a copy to the bridge engineer, Kravetz, and a copy to Greiner.

On April 13, 1961, a meeting was held in Walters' office attended by him, Kravetz, an assistant of Kravetz, and three Greiner engineers. The Greiner men explained that they could make recommendations on all claims but that final decision on some would depend on the policy of the City in regard to the lapse of time between an award and the notice to proceed. They then made comments and specific recommendations to the City officials on each of Allied's various claims, generally recom-

mending no allowance at all but, as to some, suggesting payment of a small percentage of the amount claimed.

A week later, on April 20, 1961, Walters wrote Allied saying that after examination "and carefully weighing all the circumstances connected with this contract," the City disallowed all claims. The letter then suggested that under Sec. 4-39 of the contract specifications the matter could go to the Director of Public Works, Werner, for his controlling decision. On May 12, Allied wrote Werner saying that Walters had disallowed their claims on April 20 and that "in accordance with Section 4-39 of the specifications of this contract, we wish to appeal this decision."

Werner then directed Walters and Kravetz to make an investigation and analysis of the facts and figures involved in the claims. A meeting was held on May 22, 1961, attended by Walters and Kravetz, representing the City, and Allied's president, Pecora, and its vice-president, Kingan. One small claim was approved and it was agreed that the others would first be gone over by the City and Allied and, if possible, agreed on, and then submitted to Werner for his decision. A number of meetings followed, culminating with two full days of investigation by Kravetz at Allied's office (on Friday, September 29, and Saturday, September 30), during which each claim was again checked in detail. Kravetz was given Allied's complete files including material and time sheets, cancelled checks and other written data he wanted for verifications. As a result of this detailed study, Allied's claim of $104,266.26 was cut to $71,106.90. Kravetz told Allied he would recommend to his superior Walters that this amount be paid and if Walters agreed that it should the figure would be submitted to Werner for his final decision, and Allied assented.

Walters did accept Kravetz' recommendation after a meeting in late October with Pecora and Kravetz at which the claims again were gone over thoroughly. Walters suggested to Pecora that he "set up" a meeting with Werner for submission of the claims as reduced. The meeting was held on November 3, attended by Werner, Walters, Kravetz and Pecora. The claims were discussed one by one, with consideration being given to their backgrounds and reasons for being, and their

merits and amounts, as originally submitted and as reduced. After this, Walters recommended payment of the claims and Werner said he would accept the recommendation.

Thereupon Walters handed Werner a letter addressed to the Board of Estimates of Baltimore City recommending payment to Allied in the amount of $71,106.90, which he told Werner he had caused to be prepared in anticipation of Werner's decision. The letter which was dated November 1 and signed by Walters (a) recited the date of the contract, June 25, 1958, the beginning of work on December 1, 1958, and its finish on August 24, 1960, resulting in a total of 349 working days compared to the 270 such days allowed by the contract, and that the final cost of the work performed by Allied was $66,790.98 more than the contract price (the parties are in agreement that previously authorized funds were available to pay the sum of $4,315.92 which is the difference between $71,106.90, the amount it had been determined Allied should receive, and $66,790.98, so that only the latter amount presently was sought from the Board of Estimates) ; (b) explained the reasons for the delay (deletion of a water line from the bridge and construction by the City of a sewer line in the area) ; (c) set out the details and amounts of each claim; (d) requested authority to expend $66,790.98; and concluded (e) "these facts, together with the delays interposed by the sewer line construction and changes in plans, in our opinion justify the allowance of 79 extra working days shown by the record, and it is so recommended for your approval."

Werner read the letter, signed it under the typed word "approved" and over the typed words "Director of Public Works" and then authorized its presentation to the Board of Estimates. He directed Walters and Kravetz to be before the Board when the letter was presented in order to be available to answer any questions. Pecora was given a copy of the letter and assured that it would be his evidence that the City had agreed to pay Allied and that payment could be expected in a matter of days after the Board of Estimates approved the request for funds.

On November 8 the Board, at a formal meeting, did approve the request. Allied was not paid because the City disbursing department would not pay more than the $66,790.98 authorized

by the Board of Estimates unless the vouchers which had been presented to it were reformed and the highway officials seemed unable to comply so as to satisfy the disbursing department, although in an effort to do this Werner went with Pecora to see the department head and request expeditious action. Meanwhile, considerable time passed and, at the end of November, Kravetz announced to Pecora that he had come to the conclusion that the City had made a bad settlement and offered Allied $41,000 in full on a take it or leave it basis. It may be inferred from the record that two reasons actuated Kravetz. First, the written reports of Greiner on the subject of Allied's claims—which had been written almost a year before and the substance of which had been transmitted to Walters and Kravetz and an assistant of Kravetz at the meeting of April 1961 — were forwarded to Kravetz by Greiner on November 22. (Apparently Greiner would not sooner deliver the written reports to the City because it had not been paid the additional compensation it thought it should be paid for them.) The second was that Kravetz seemingly was disturbed because the City, in weighing the fairness of Allied's claims and the desirability of paying them, had routinely contemplated that the United States Bureau of Public Highways would pay half of the additional costs, as it had of the original contract costs, and the Bureau refused to pay anything under its regular policy not to do so when the municipality was at fault or responsible for the extra cost.

Pecora refused Kravetz' take it or leave it offer of $41,000 in full settlement, saying that Allied had an accrued and absolute right to $71,106.90 under the award of the referee Werner, the Director of Public Works.

On January 9, 1962, the City sent Allied a check for $43,-372.56, marked "final payment of all claims"—the amount having been arrived at by Kravetz without consultation with Werner who did no more than sign the check. After consulting its lawyer, Allied deposited the check and wrote Walters that the check was for less than the amount "awarded us by the decision of the Director of Public Works and approved by the Board of Estimates on Nov. 8, 1961" and that it reserved the right "* * * to take whatever additional steps are necessary to enforce collection of this difference."

Allied filed suit against the City on February 23, 1962, for $28,869.37 (the difference between "the final sum due" plus "agreed arbitration adjustments for credits" minus the amount of the check for $43,372.56). It filed a motion for summary judgment, supported by the affidavit of Pecora as to the matters which have been recited above. The declaration alleged facts to support its theory that there had been "decision and arbitration" under the contract which was "final and binding in a liquidated amount" and had not been paid in full. The City filed the general issue plea, an answer to the motion for summary judgment, in which it was alleged that there was a genuine dispute as to material facts and admitted "that such claims [those of Allied] were referred to the Director of Public Works as arbitrator," but denied that the Director decided Allied was entitled to $71,106.90 as alleged by Allied. The answer further asserted "that the amount determined by the arbitration to be due Plaintiff was $43,372.56, which was paid to and accepted by the Plaintiff in full payment and satisfaction." Also filed by the City was the affidavit of Kravetz in support of the answer. This did no more than repeat in outline the refutations and allegation of the answer.

The City filed interrogatories which, among other things, asked Allied to state in detail the bases of its various claims totalling $71,106.90.

Allied excepted to these interrogatories for the reason that "* * * this suit is predicated on an adjudication and arbitration by Bernard L. Werner in his capacity as Director of Public Works and acting under the authority vested in him in the Specifications pertaining to the work." Allied's exceptions further stated that the City's effort was to reopen matters which had all been thoroughly explored prior to Werner's adjudication and that these matters were not now subject to review, so that Allied "stands on the basis of a binding arbitration and award by the Director of the Board of Public Works."

Judge Niles sustained Allied's exceptions, the case was placed on the consolidated docket as a non-jury case and, in due course, came on for trial before Judge Byrnes. Opening statements were made, pertinent writings were introduced and testimony taken over a two-day period from Pecora, Walters, Werner,

Kingan, Kravetz, and Carroll Simmons, a lawyer who is in Werner's department and sits in with him on formal hearings or claims against the City. Arguments on both sides were made and briefs submitted.

Judge Byrnes filed a written opinion in which he said there were two questions to be decided—whether Werner had acted under the contract provisions as referee and made a binding award, and whether the acceptance of the check for $43,372.56 marked "final payment of all claims" released the City from further demands. Judge Byrnes, after referring to the testimony and the writings introduced, found "* * * that the evidence compels the conclusion that all interested parties intended the meeting of Nov. 3, 1961, to be a final determination by the arbitrator of the damages claimed and as there were no formalities required for a valid arbitration under Section 4-39 of the Specifications the approval of Mr. Werner did constitute an arbitration and final determination of the damages claimed." He also found that inasmuch as there had been a final determination by the referee specified in the contract, the City could not be heard to say that the amount due thereafter was in dispute and, therefore, the liquidated and undisputed claim of Allied was not discharged by the payment of a lesser amount notwithstanding the presence of a notation stating that the lesser amount is to constitute payment in full.

Then, although he had in effect made findings of fact, Judge Byrnes "after carefully considering the evidence" found "* * * that there is no dispute as to any material fact and that the case is properly before the Court for summary judgment consideration" and granted Allied's motion for summary judgment, directing payment of $27,734.34.

In this Court the City contends that summary judgment could not have been properly granted because of disputes as to material facts, that there never was an arbitration or award under Sec. 4-39 of the contract (counsel for the City, at the conclusion of the trial below, told Judge Byrnes that the statements of the City over the signature of the City Solicitor and the assistant solicitor in charge of the case, made in the answer to the motion for summary judgment and repeated in the supporting affidavit that it admitted that Allied's claims had been

"referred to the Director of Public Works as arbitrator" and that "the amount determined by arbitration to be due * * * was $43,372.56," had been included in the pleading inadvertently and mistakenly), that if there was arbitration it was not binding because vitiated by mistake and that acceptance of the check for $43,372.56 discharged the City from further obligation to Allied.

It is clear, we think, that summary judgment could not have been granted under the circumstances. Werner's testimony was that he had never held a formal hearing as, he said, he would have if he had acted under Sec. 4-39 of the contract specifications and that his approval of the $71,106.90 payment was conditional in that he said that it was to be subject to further check to be made by Kravetz. Allied's evidence was to the contrary. After Judge Niles, by upholding Allied's exceptions to the City's demand for the furnishing of the details of the various claims, had limited the issue to whether there had been a binding adjudication by Werner, it is clear that both sides prepared to go to trial and did go to trial on the merits of that issue. This view is buttressed by various colloquies between counsel and the court, various rulings of the court and the memorandum of law of each side submitted after testimony had been concluded and the case argued orally. There were conflicting factual contentions to be resolved, or, at the least, differing significant inferences that could have been drawn from what the various witnesses testified had been said and done, and the trial court made factual resolutions and drew inferences in arriving at his decision.

Summary judgment was not proper or permissible under such circumstances. Md. Rule 610 d 1; *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 19; *Tellez v. Canton Railroad Co.,* 212 Md. 423; *White v. Friel,* 210 Md. 274.

That Judge Byrnes characterized the judgment as summary and said it had been granted on Allied's motion for such a judgment does not mean that his action in determining that Allied was entitled to $71,106.90, by reason of Werner's decision that the City properly should pay that sum, was in error.

There was a full hearing on the merits, at which Allied presented the writings and witnesses it desired in support of its

contention that there had been a binding award which was the equivalent of the award of an arbitrator, and the City did the same in an effort to show the contrary. The argument of the City that the trial was not on the merits because the City was not permitted to show that the award was made in error and was unjustified is not sound. The issue had been limited to, and the trial was to determine, whether in fact and in law there had been a binding award, not whether the award was correct or whether the court would have made the same award. The Greiner reports and the circumstances of the revelation of their contents to the City officials in April and their transmission to the City in late November came into evidence and were sufficient to enable the court to decide whether there had been any mistake in the making of the award of a kind sufficient to invalidate it.

It is established that when the parties have provided for a binding determination of disputed matters by a designated person, such as an architect or engineer, even though that person is an official or representative of one of the parties, his decision is the equivalent of the award of an arbitrator and like such an award is final and conclusive on both parties in the absence of fraud or mistake so gross as to imply bad faith or the failure to exercise honest judgment. *Nelley v. Baltimore City*, 224 Md. 1, and cases cited.

Every reasonable intendment supports the validity of such an award and ordinarily an arbitrator may not impeach his own award. *Parr Construction Co. v. Pomer*, 217 Md. 539, 543.

The City contends that there was no award under Sec. 4-39 of the contract specifications because no formal hearing underlay its making. We see no significance in this fact. As Judge Byrnes observed in his opinion: "Sec. 4-39 of the Specifications merely states '* * * the Director will be the referee in case any question shall arise between the contractor and the city touching the contract.'" We agree with his conclusion there was no provision requiring a formal hearing or mode of determination, *Boor v. Wilson*, 48 Md. 305, 314, and he was justified in deciding that "* * * considering all the circumstances the conduct of the parties unquestionably indicates that the meeting of November 3, 1961, was intended to be a final arbitration of the damages claimed."

The City argues further that Werner did not referee or arbitrate but only approved a negotiated settlement, admitting that the line between the two may be a fine one. The testimony certainly permitted the finding that the parties were on the arbitration side of the line. Werner considered not only amounts but the background, reason and validity of each claim and the final decision was his. Apposite here is what was said in *Litman v. Holtzman,* 219 Md. 353, because here, as in *Litman,* much, if not all, that was done by the referee constituted an arbitration in the nature of an appraisal. In *Litman* it was said (p. 359): "* * * although he was aided by his employee in procuring the facts, figures, data and verifications, all pertinent and essential judgments, tentative and final, were his." Later in the *Litman* opinion the following language was adopted (p. 363):

> "* * * '[I]t is entirely proper for arbitrators, in a case requiring it, to obtain from disinterested persons of acknowledged skill such information and advice in reference to technical questions submitted to them, as may be necessary to enable them to come to correct conclusions, provided that the award is the result of their own judgment after obtaining such information.' "

The claim of the City that there was mistake in the award which it should have been allowed to show by developing the theories of the Greiner reports must be rejected. A mistake which will vitiate or invalidate an award must be gross and manifest to the point of showing bad faith or failure to exercise honest judgment. *M. & C. C. of Balt. v. Clark,* 128 Md. 291, 309, 313-314; *J. A. LaPorte Corp. v. Mayor and City Council,* 13 F. Supp. 795 (D. C. Md.).

Mistakes by an arbitrator in drawing incorrect inferences or forming erroneous judgments or conclusions from the facts will not vitiate his award. *Roloson v. Carson,* 8 Md. 208; *Ebert v. Ebert,* 5 Md. 353; *Cromwell v. Owings,* 6 Har. & J. 10.

As in the case of an enrolled judgment, the decisive primary question is not whether the judgment was right or wrong but whether impropriety, to a significant extent, brought about its

obtention. In the case before us the most that can be gleaned from the record is that if there was error, it was error in judgment. The City officials knew everything that Allied knew and also knew Greiner's views and with all this before him Werner made a judgment. Whether it was right or wrong is beside the point, for it was honestly made on fully known or thoroughly investigated facts, circumstances, and figures. That the City chose to attribute more weight to Greiner's views in late November (after the federal road officials would not pay half the cost of Allied's extra work) than it did in April and early November would not amount to a mistake in the obtention or coming about of the award.

The trial court did not, in our view, err in deciding that the case was governed by the rule of *Eastover Co. v. All Metal Fabr.*, 221 Md. 428, that where a claim is liquidated and undisputed it is not discharged by acceptance of a lesser sum tendered in full settlement. The valid award made the claim of Allied liquidated and undisputed within the meaning of the rule.

It appears to us that the purposes of justice will be advanced by permitting further proceedings in this cause and, therefore, the case is remanded to the lower court without affirmance or reversal for the entry of a proper judgment in the amount of the referee Werner's award, less payment thereon of $43,372.56, upon the findings of fact and conclusions of law of Judge Byrnes which we have approved. Such a judgment, in addition to the sum of $27,734.34, the amount of the judgment granted by Judge Byrnes ($71,106.90 minus $43,372.56), may be determined to include in addition the sum of $1,135.03 (the difference between the reduction originally made by the City of $12,648.00, because of the elimination of the water mains from the contract, and $11,512.97 which Allied claimed was the proper reduction) if the trial court finds as a fact that the award included the lessened credit, because the letter of November 1, 1961, approved by Werner November 3, 1961, included it, or for some other reason.

> *Case remanded, without affirmance or reversal, for further proceedings in accordance with this opinion, costs to be paid by the appellant.*