## JOSEPH F. TRIONFO & SONS, INC. ET AL. *v.* ERNEST B. LaROSA & SONS, INC.

[No. 548, September Term, 1977.]

*Decided January 18, 1978.*

The cause was argued before ** MENCHINE, MOORE and LISS, JJ.

*S. Leonard Rottman* for appellants.

*Michael J. Schwarz,* with whom were *Fleischmann, Needle, Ehudin & Schwarz* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

The ever-expanding body of law with respect to "arbitration" is involved in this appeal which arises out of a controversy between a general contractor on a school construction project (the appellant) and the excavation and site-work subcontractor (the appellee). The narrow question presented is whether an agreement to arbitrate existed, as claimed by the general contractor, against whom the subcontractor recovered a judgment in excess of $200,000 after a thirteen-day jury trial. The Uniform Arbitration Act,

---

** *Reporter's Note:* Menchine, J., participated in the hearing of this case and its decision, but retired before it was filed.

Md. Cts. & Jud. Proc. Code Ann. §§ 3-201 *et seq.* (1974), adopted in 1965 in Maryland, does not address the substantive requirements for an agreement to arbitrate the subject matter of a dispute. *Flood v. Country Mutual Insurance Co.,* 242 N.E.2d 149 (Ill. 1968). *See Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md. App. 307, 320 A. 2d 558 (1974), *rev'd on other grounds,* 274 Md. 307, 334 A. 2d 526 (1975).

## I

The construction of the New North Harford Middle School on Route 165 in Harford County forms the backdrop for this dispute. On January 21, 1974, appellant, Joseph F. Trionfo & Sons, Inc., a general contractor, entered into an agreement with the Board of Education of Harford County for the building of the school.[1] The contract specifications included certain "Conditions of Contract." Article 2 of the Conditions dealt with the architect, and contained a subsection entitled "Administration of the Contract." The relevant portions of this subsection provided as follows:

> "The Architect will make periodic visits to the site to determine in general if the Work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an architect, he will endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor. The Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. . . .

> \* \* \*

> "Based on such observations and the Contractor's Applications for Payment, the Architect will determine the amounts owing to the Contractor and will issue Certificates for Payment in such amounts, as provided.

---

1. The agreement was contained on a standard form prepared by the American Institute of Architects (AIA) but did not include the standard AIA "Conditions" among which are specific arbitration provisions.

*"The Architect will be, in the first instance, the interpreter of the requirements of the Contract Documents. The Architect will, within a reasonable time, render such interpretations as he may deem necessary for the proper execution or progress of the Work.*

*"Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred to the Architect for decision.* [2]

"All interpretations and decisions of the Architect shall be consistent with the intent of the Contract Documents. *In his capacity as interpreter, he will exercise his best efforts to insure faithful performance by both the Owner and the Contractor and will not show partiality to either.*

"The Architect's decision in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents." (Emphasis added.)

On the same date, appellant entered into a subcontract with appellee, Ernest B. LaRosa & Sons, Inc., whereby, for the sum of $203,000, appellee was to "supply all labor, material and equipment" to complete the work under the main contract involving excavation, paving, landscaping and fencing. The agreement was made on a printed form headed by appellant's full corporate name. The second paragraph of the subcontract, after a description of the subcontractor's responsibilities, contained the following boilerplate language, incorporating by reference certain sections of the agreement between the Board of Education as owner and the appellant as general contractor:

*". . . all as provided for in the contract between Contractor and Owner as aforesaid, which said contract, plans, specifications and general conditions*

---

**2.** Appellant relies upon this clause in support of its claim that an arbitration agreement existed.

*are hereby made a part hereof so far as the same are
applicable to the work to be done hereunder, as fully
as though the same were herein set out at length,
and Sub-Contractor hereby assumes and agrees in
carrying out this agreement to comply with all the
stipulations and conditions of said contract, and the
plans and specifications and general conditions
accompanying the same or any parts thereof, that
are applicable to the work to be done hereunder* or
that may be construed as applicable thereto by the
architect or engineer in charge of said work; *it being
the intent hereof that in respect to the work covered
hereunder Sub-Contractor shall be under the same
obligations to Contractor under this contract as
Contractor is to Owner under the terms of the
general contract aforesaid, the Contractor shall be
entitled to all the rights, privileges and remedies as
against Sub-Contractor, which Owner may have or
be construed to have under the general contract
against Contractor,* and that any direction or order
of the architect or engineer aforesaid which may be
binding upon or given to Contractor shall ipso facto
be construed as binding upon or given to
Sub-Contractor as soon as Sub-Contractor receives
notice thereof." (Emphasis added.)

An addendum to the form contract between appellant and
appellee further provided, in pertinent part:

"If sub-contractor encounters rock, boulders, or
buried logs, trees, stumps, or any sub-surface
conditions the contract price shall be increased
[$15.00] per cubic yard, and if blasting is required the
cost thereof will also be added to the contract
price." [3]

On March 26, 1975, appellee brought an action at law in the

---

3. The original typed provision called for an increase in the amount of
$50.00 per cubic yard. A handwritten change to $15.00 was initialed by
appellee's agent.

Circuit Court for Harford County against appellant,[4] alleging that in the performance of the subcontract, appellee did encounter and excavate rock and boulders and that extra compensation was due, under the terms of the subcontract, which appellant had failed and refused to pay. Appellant filed as its first pleading a "Motion Raising Preliminary Objection or in the Alternative to Order Arbitration and Stay These Proceedings." A claim was therein made that the main contract designated the architect "as the arbitrator of all matters involving claims and disputes concerning amounts owing and interpretations of the Contract Documents," and that such provision was effectively incorporated by reference into the subcontract.[5]

Judge Harry E. Dyer, Jr. presided at the hearing on the motion, and denied appellant's request that arbitration be ordered, holding essentially that:

1) The main contract provision in question was not an arbitration clause;

2) An architect was not a private, impartial third-party, and could not properly be designated an arbitrator;

3) The decision of the architect was not deemed to be "final," and could not be considered a binding arbitration award.

Judge Dyer further stated:

"[T]he only consistent interpretation of the contract is to read the architect's function as that of making the day to day decisions on the proper course of construction. The contract calls for the architect to render such decisions 'within reasonable time,' so that the execution of the work will progress. . . ."

---

4. Suit was also brought against Travelers Indemnity Co., the bonding agent for appellant. (For convenience, appellants will be referred to in the singular.)

5. It is uncontroverted that the subcontract itself contained no specific provision for arbitration.

The case proceeded, no further steps being taken by appellant to compel arbitration of the dispute.[6] After a protracted jury trial before Judge Edward D. Higinbothom, a verdict was returned in favor of the subcontractor, and damages were awarded for removal of the rock under the terms of the addendum to the subcontract.

The primary issue on this appeal is stated in appellant's brief in the following manner:

> "Did the Court err in failing to grant [Appellant's] Motion Raising Preliminary Objection, and order arbitration in these proceedings?"

A subsidiary question raised is whether the court erred in refusing to grant a removal from Harford County. We answer appellant's inquiries in the negative.

## II

As already stated, the language of the contract between the owner and the general contractor (incorporated by reference into appellee's excavation subcontract), upon which appellant lays claim to an agreement to arbitrate, is the following:

> "Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred to the Architect for decision."

We do not consider this clause to represent an agreement to arbitrate the subject matter of the dispute between the parties, namely, the extent of the additional excavation work required to be performed by the subcontractor, and the additional compensation, pursuant to specific provisions of the subcontract, to which it was entitled.

In so holding, it is not our view that, to constitute an agreement to arbitrate, the language employed must be the now familiar provisions of the standard form of agreement

---

6. *See infra,* Section IV of this opinion. The proper procedure would have been to file a petition on the equity side of the court to require arbitration. Md. Cts. & Jud. Proc. Code Ann. § 3-207 (1974).

adopted by the American Institute of Architects.[7] We recognize that no particular form of words is indispensable to the making of a valid agreement to adjust and mediate a dispute between contracting parties without resort to litigation. Indeed, the language need not include the word "arbitrate" nor "arbitration." *Mencher v. B. & S. Abeles & Kahn,* 84 N.Y.S.2d 718 (Sup. Ct. 1948). Neither is it fatal or improper, contrary to Judge Dyer's holding below, that a representative of one of the contracting parties — be it the architect, engineer or other third-party — is the one designated as the mediator whose decision is to be recognized as final and binding. *See Nelley v. Mayor of Baltimore,* 224 Md. 1, 166 A. 2d 234 (1960); *Mayor of Baltimore v. Allied Contractors, Inc.,* 236 Md. 534, 204 A. 2d 546 (1964). *See also Mayor of Baltimore v. M. A. Talbott & Co.,* 120 Md. 354, 87 A. 941 (1913); *J. A. La Porte Corp. v. Mayor of Baltimore,* 13 F. Supp. 795 (D. Md. 1936); *Mayor of Baltimore v. Ault,* 126 Md. 402, 94 A. 1044 (1915). There must, however, be some reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the

---

7. The AIA "Conditions of the Contract" contains the following broad arbitration language in § 7.10.1:

"All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court, having jurisdiction thereof." *AIA Architect's Handbook of Professional Practice,* Chapter 19, pp. 10-11.

We observe in this connection that in a leading arbitration case considered by this Court and by the Court of Appeals, Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc., *supra,* similar specific arbitration language was employed, and the narrow issue involved was the question whether a timely demand for arbitration had been made was itself arbitrable. The Court of Appeals held that the timeliness of the demand for arbitration is a threshold question for the courts to decide in the first instance.

controlling factor. *Pumphrey v. Pumphrey,* 172 Md. 323, 191 A. 235 (1937).

The cases upon which appellant relies involve agreements containing clear and unambiguous language and broader delegations of authority than that with which we are presented in this case. Thus, in *Nelley, supra,* involving a dispute between a contractor and the City of Baltimore with respect to a claim for additional costs incurred in the construction of a sewer line, there was an actual arbitration clause, specifically designated as such and containing, in part, the following language:

> " 'To prevent disputes and litigations, the Director of Public Works will be the referee in case any question shall arise between the Contractor and the City touching the Contract, *and his determination, decision and/or estimate shall be final and conclusive upon the Contractor* and shall also be a condition precedent to the right of the Contractor to receive any moneys under the Contract.' " 224 Md. at 6, 166 A. 2d at 236. (Emphasis added.)

It is of more than passing interest that the identical clause was also involved in *Allied Contractors, supra,* where the court sustained the validity of an arbitration award of additional costs incurred in the performance of a contract for the construction of a bridge.

In the instant appeal, the language in the general contract above quoted, considered in the light most favorable to the appellant, is not indicative of an intention that the disputed matter here involved be submitted to arbitration, but rather, that the work proceed to completion on a day-to-day basis without undue delay. There is manifested an intent that the work under the contract progress smoothly and not be impeded by recourse to judicial determination of minor questions which would inevitably arise during the course of construction.[8] *See Eisel v. Howell,* 220 Md. 584, 155 A. 2d 509 (1959).

---

8. In this respect, the language employed in this case is somewhat similar to the first paragraph of the arbitration clause in *Nelley, supra,* upon which

Other provisions of the contract pertaining to its "administration" reinforce our conclusion that no agreement for the arbitration of this particular dispute existed. The architect was to be, *"in the first instance,* the interpreter of the requirements of the Contract Documents." (Emphasis added.) It was further the responsibility of the architect to "make periodic visits to the [construction] site to determine in general if the work is proceeding in accordance with the Contract Documents." The "best efforts" of the architect were to be utilized "to insure faithful performance by both the Owner and the Contractor," and partiality was not to be shown to either. The only expression of "finality" with respect to the architect's decision was as to "artistic effect." Although an expression of finality is not, we fully realize, required, *Ferris v. Polansky,* 191 Md. 79, 59 A. 2d 749 (1948), it is indisputable that the designation of the architect's decision on such matter as final, without any similar designation with respect to interpretation of the contract documents, or other matters, sheds light upon the intent of the parties as to the responsibilities of the architect.

The language of the agreement upon which appellant relies, read in the context of the entire agreement, does not indicate an intent to submit the matter of a payment dispute *after the work has been completed* to the architect for binding arbitration. *See Eisel v. Howell, supra.* Had the contract contained language analogous to the arbitration clause found in both *Nelley* and *Allied Contractors, supra,* we would reach a different result.

---

the Court of Appeals made no comment and which was not involved in the arbitration proceedings under the second paragraph, above quoted, which the Court upheld. The language in the first paragraph was as follows:

" 'Subject to the power and authority of the Director of Public Works as provided by law and in these contract documents, the Sewerage Engineer shall in all cases, determine the amount or quantity, quality and acceptability of the work and materials which are to be paid for under this contract; shall decide all questions in relation to said work and the performance thereof; and shall, in all cases, decide questions which may arise relative to the full-fillment of the contract or to the obligations of the Contractor thereunder.' " 224 Md. at 6, 166 A. 2d at 236.

## III

Appellant has brought forth an additional argument for reversal of the judgment in this case. Prior to trial, appellant filed a Suggestion for Removal, alleging that a fair and impartial trial could not be obtained in Harford County because of newspaper articles concerning increased costs of the construction of the school, the issuance of a citation to appellant by the State Department of Environmental Services because of dirt and dust, and a fatal automobile accident involving an employee who was killed as he was leaving the site. Appellant also pointed to a newspaper photograph of the construction site containing a caption to the effect that appellee had encountered rock and had begun blasting, and complained that the precise issue before the jury for determination was whether or not rock was encountered by appellee at the site.

We do not believe the trial court abused its discretion in denying appellant's Suggestion. Under *Davidson v. Miller,* 276 Md. 54, 83, 344 A. 2d 422, 439 (1975), a constitutional right to removal no longer exists, but courts may freely exercise

> ". . . their common law discretionary power (which is subject to appellate review for abuse) to remove an action to another jurisdiction . . . in order to rid the case of any prejudicial barnacles which, because of local prejudice, passion or interest, may have attached. . . ."

Appellant has clearly not made a sufficient showing of prejudice under this standard. *See also Firstman v. Atlantic Construction and Supply Co.,* 28 Md. App. 285, 345 A. 2d 118 (1975).

## IV

Appellee subcontractor alternatively argues in its brief that appellant waived, or should be estopped from asserting, a right to arbitration, because its motion raising preliminary objection did not comport with the prescribed statutory procedure. We have chosen to decide the case upon the merits. For the guidance of litigants in the future, however, we

express our view that the statutory procedure was intended to be an exclusive method for obtaining an order to compel arbitration, and that the issue of arbitration should *not* be asserted in a motion raising preliminary objection under Maryland Rule 323.

Section 3-207 of the Maryland Uniform Arbitration Act provides as follows:

> "(a) If a party to an arbitration agreement described in § 3-202 refuses to arbitrate, *the other party may file a petition with a court to order arbitration.*
>
> "(b) If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.
>
> "(c) If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition." (Emphasis added.)

Appellant, in its zeal to obtain a determination of the controversy by the architect, overlooked the definitional section of the Uniform Act, § 3-201, which provides, in pertinent part:

> "(a) In this subtitle, the following terms have the meanings indicated.
>
> "(b) *'Court' means a court of equity.*" (Emphasis added.)

Since appellee's declaration was filed at law in the Circuit Court for Harford County, appellant should have separately petitioned in equity for an order compelling arbitration.

Appellant's error was of some consequence, as it tended to thwart what we regard as an implied purpose of the Uniform Act, permitting an appeal from a final order of an equity court denying an application to compel arbitration.[9] In resorting to

---

9. Prior to the recodification of the Maryland Act in the Courts and Judicial Proceedings Article, a separate section was devoted to appeals. Md. Ann. Code of 1957, art. 7, § 18, provided in pertinent part:

> "(a) An appeal may be taken from:
> (1) An order denying an application to compel arbitration . . .;
> (2) An order granting an application to stay arbitration. . . ."

The only remnant of this section in the Courts Article is § 12-303, entitled "Appeals from certain interlocutory orders," providing:

a motion raising preliminary objection, appellant precluded itself from obtaining a pretrial appellate determination as to the existence of the arbitration agreement, since the court's denial of the motion was interlocutory in nature, and not a final order under Md. Cts. & Jud. Proc. Code Ann. § 12-301 (1974).[10]

*Judgment affirmed; appellants to pay the costs.*

---

"A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \*

"(c) An order

\* \* \*

"(9) Granting an application to stay arbitration pursuant to § 3-207 of this article."

The Revisor's Note to § 12-303 states:

"[P]aragraph (9) picks up a provision of Article 7, § 18. Section 18 deals with appeals with respect to arbitration and award. *Most of its language deals with appeals from final judgments and is thus covered by § 12-301.* The particular provision contained in paragraph (9) might authorize an appeal from an interlocutory judgment, and thus is included here. . . ." (Emphasis added.)

Section 12-301 authorizes an appeal from the entry of a final judgment in a civil or criminal case. It is our view that an order denying an application to compel arbitration would be a final order, and an appeal could be taken with a stay of court proceedings until disposition of the appeal.

10. Courts in other jurisdictions have held that *procedures* under arbitration statutes are intended to be exclusive remedies. *See* Housing Authority v. Henry Ericsson Co., 2 So. 2d 195 (La. 1941); Cadbury-Fry (America) Inc. v. Opler, 91 N.Y.S.2d 742 (Sup. Ct. 1949); Koscove v. Peacock, 317 P. 2d 332 (Colo. 1957).