869 A.2d 396

**BALTIMORE CONTRACTORS, LLC**

**v.**

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 2808, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Feb. 28, 2005.

William M. Huddles (Kenneth K. Sorteberg, on brief), Columbia, for appellant.

James Benjamin (Ralph S. Tyler, City Solicitor, Justin J. King, Deputy Chief of Litigation, on brief), for appellee.

Panel EYLER, JAMES R., BARBERA, SHARER, JJ.

SHARER, J.

This appeal arises from a disagreement about the form of dispute resolution to be utilized under a construction contract between the parties. We are asked to decide whether the parties are bound to arbitrate their contractual dispute, or whether the aggrieved contractor is required to pursue an administrative remedy.

Appellant, Baltimore Contractors, LLC ("Contractor"), claims that appellee, Mayor and City Council of Baltimore ("the City"), materially breached the building contract under which it was to construct a police station for the City. After limited, unsuccessful, attempts to resolve the dispute through administrative channels, Contractor brought an action in the Circuit Court for Baltimore City, seeking a declaratory judgment that the City was compelled to submit the issues to binding arbitration.

Concluding that Contractor had failed to exhaust its administrative remedies, the circuit court granted summary judgment in favor of the City. That ruling has led to this appeal, in which appellant presents for our review two questions, which we have distilled into:

Whether the contract, considering provisions of the Baltimore City Charter, requires that the parties submit to binding arbitration of their dispute.[1]

---

1. Appellant's questions, as presented in its brief, are:
   (1) Whether the Circuit Court erred in dismissing Baltimore Contractors' Complaint for Declaratory Judgment and for Other Relief.
   (2) Whether the parties' contract, when read in conformity with the City Charter, requires as a matter of law that the parties submit their

We shall hold that the parties are bound by the provisions of the Baltimore City Charter, Article II, Section 4A, and must adhere to the procedures provided therein. Therefore, we shall affirm.

## FACTUAL BACKGROUND

Appellant, a general contractor, entered into a contract with the City, the owner, for the construction of a project known as the Northern District Police Station. The original contract price was $4,360,000, and the contract called for completion of the project in 270 calendar days. Contractor claims that the City, through a series of delays and failures of performance, materially breached the contract in a number of ways, causing damage.

In an effort to resolve the various disputes, Contractor submitted its claims to Gerald W. Weeks, the City Inspector assigned to the project. After reviewing those claims, Weeks determined them to be without merit. Contractor then sought further review by Keith Scroggins, head of the City's Bureau of General Services. That review produced a similar decision.

Appealing the Scroggins decision, Contractor submitted its claim to George Winfield, the City's Director of Public Works, in August 2003, and sought an evidentiary hearing. In accordance with Baltimore City's established dispute resolution procedure, Winfield began the process of creating a scheduling order for a hearing.

Before Winfield could complete the hearing process, Contractor, on August 29, 2003, filed this action seeking a declaration that the City was compelled to arbitrate. As a result, the administrative procedure was stayed.

We shall address additional facts as necessary to provide context.

---

disputes to arbitration, and if so, whether the Circuit Court erred in failing to order the parties to submit their disputes to arbitration.

## PROCEDURAL HISTORY

Count I of Contractor's complaint sought a declaratory judgment that the dispute resolution clause in the contract required the parties to proceed to binding arbitration.[2]

On October 31, 2003, the City filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, asserting that Contractor was not entitled to judicial relief because it had failed to exhaust its administrative remedies.[3]  On November 7, 2004, Contractor filed its Cross Motion for Summary Judgment and opposition to the City's motion, again asserting that the contract compelled arbitration.

The issues came on for a motions hearing in the circuit court on December 22, 2003, at which counsel argued their respective positions.  No testimony was taken.  On February 23, 2004, the court filed a written memorandum opinion, denying Contractor's Motion for Summary Judgment and granting the City's Motion for Summary Judgment. A final judgment was entered in favor of the City on all three counts of the complaint.

We set out relevant parts of the circuit court's memorandum, declaring the rights of the parties:

Citing *Nelley v. Mayor* and *Mayor and City Council v. Allied Contractors*, [Contractor] argues that use of the term "referee" in the contract dispute provision mandates the conclusion that the provision is an arbitration clause.

[Contractor's] reliance on *Nelley* and *Allied Contractors* is not persuasive.  The contract language at issue here was not at issue in either of those cases.  In *Allied Contractors*, a decision made by the Director of Public Works, under a

---

**2.**  Count I also sought a declaration that the provision in question was void as contrary to the Baltimore City Charter.  Contractor withdrew this position, however, in its Cross Motion for Summary Judgment and Opposition to Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Counts II and III, which do not concern us in this appeal, set out claims for damages.

**3.**  The City sought dismissal of all three counts on this basis.

contract provision similar to the one here, was at issue. The opinion makes reference to "arbitrator" and "arbitration," but no party objected to that characterization. Indeed, the City was the party that referred [the claim] to the Director of Public Works in his dispute resolution capacity as arbitrator. Although whether he was an [sic] neutral, arbitrator, mediator or something else was not at issue, the language of Judge Hammond does not support the position of [Contractor]. Judge Hammond's language suggests that the Director of Public Works is something different than an arbitrator: "It is established that when the parties have provided for a binding determination of disputed matters by a designated person, such as an architect [or] engineer, even though that person is an official or representative of one of the parties, his decision is the *equivalent* of the award of an arbitrator[.]" *Nelley* is of no greater help to the [Contractor]. Again, the Court of Appeals makes casual reference to arbitrator and referee in a case about the power of referee/arbitrator to decide misrepresentation claims. The Court did not decide that a reference to a "referee" meant "arbitrator."

[Contractor] abandoned its argument that the contract provision at issue is void[.] Even if [Contractor] has not abandoned his claim entirely, however . . . the Court accepts the [City's] position that the dispute clause of the contract is valid for the reasons stated by Judge Smalkin of the United States District Court for the District of Maryland in *MCI Constructors, LLC v. Mayor and City Council*, exhibit 5 to the [City's] Memorandum. Because the only position advanced by [Contractor] is premised on its erroneous conclusion that the parties[ ] agreed to arbitration by appointing the Director of Public Works as "referee," [contractor's] motion for summary judgment will be denied.

Moreover, the Court agrees with [the City] that [Contractor] is required to, and has not, exhausted its administrative remedies before pursuing its claim in this Court. Accordingly, the Court will grant summary judgment for [the City] and against [Contractor] on Count 1 finding that [Contrac-

tor] has abandon[ed] the relief sought under this count and, alternatively, that [Contractor] is not entitled to the relief sought. The Court will grant summary judgment in favor of [the City] on Counts II and III for the reason that [contractor] has not exhausted its administrative remedies.

Appellant noted this timely appeal.

**Whether the contract, considering provisions of the Baltimore City Charter, requires that the parties submit to binding arbitration of their dispute.**

### STANDARD of REVIEW

In reviewing the trial court's grant of summary judgment, we apply a *de novo* standard of review. *Beyer v. Morgan State Univ.*, 369 Md. 335, 359, 800 A.2d 707 (2002). The Maryland Rules provide:

A court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine issue as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Md. Rule 2–501(f) (2005).

Thus, in examining the trial court's judgment, we must first determine whether material facts are in dispute. *Todd v. Mass Trans. Admin.*, 373 Md. 149, 154, 816 A.2d 930 (2003). If, however, there exists no dispute as to material facts, we determine whether the moving party is entitled to judgment as a matter of law. *Id.* at 155, 816 A.2d 930. That is, we ascertain whether the court was legally correct in granting summary judgment. *Okwa v. Harper*, 360 Md. 161, 178, 757 A.2d 118 (2000). Moreover, in making these determinations, we are mindful to construe the well-pleaded facts and any inferences that may be drawn therefrom in the light most favorable to the non-moving party, here appellant. *See Todd, supra,* 373 Md. at 154, 816 A.2d 930.

## DISCUSSION

■ The contract between the parties contains the following language:

> To prevent disputes and litigations [sic], the Director of Public Works will be the referee in case any question shall arise between the Contractor and the City touching the contract, and his determination, decision and/or estimate shall be final and conclusive upon the Contractor, and shall also be a condition precedent to the right of the Contractor to receive any monies under the contract.[4]

That provision is taken from Section 10.04–54 of Baltimore City's 1979 Standard Specifications, known in the trade as the "Green Book." Contractor sought a declaration that Section 10.04–54 is void as being in conflict with Article II, Section 4A of the Baltimore City Charter.[5]

That relevant section of the City Charter provides:

> (a) Except as provided in subsections (b) and (c) of this section, Baltimore City may not require in a construction contract, or otherwise provide with regard to a construction contract, to which it is a party, that a dispute between the parties involving $10,000 or more regarding the terms of the contract or performance under the contract, be subject to final binding or conclusive determination by an officer or official body of Baltimore City.
>
> (b) Baltimore City may require or provide, with regard to a construction contract to which it is a party, that if there is a dispute regarding the terms of the contract or performance under the contract, the question or questions involved in the dispute shall be subject to a determination which is final and conclusive on all parties, made either by:

---

4. The record does not contain a copy of the contract. The parties assure us that the quoted clause is the only contractual reference to dispute resolution.

5. While Contractor abandoned that challenge in the circuit court, we perceive that it has revived it in this appeal, as an alternative argument, as we shall discuss, *infra*.

(1) a neutral person or entity selected by or in accordance with a procedure established by the highest executive authority of Baltimore City; or (2) in the event that the other party does not accept as neutral a person or entity selected under paragraph (1) of this subsection, by an arbitration panel composed of the following:

(i) one member designated by the highest executive authority of Baltimore City;

(ii) one member designated by the other party to the dispute; and

(iii) one member to be selected by mutual agreement of the 2 designated members from lists to be submitted by the parties to the dispute.

(c) Notwithstanding the provisions of subsections (a) and (b) of this section, Baltimore City may provide or require, with regard to a construction contract to which it is a party, that a dispute between the parties involving $10,000 or more regarding the terms of the contract or performance under the contract, be subject to a determination of questions of fact by an officer or official of Baltimore City, provided that the decision of the officer or official body of Baltimore City is subject to review on the record by a court of competent jurisdiction.

The central issue in this litigation is whether the contractual dispute resolution clause contained in the contract between the parties is a valid arbitration clause, or whether the parties are bound by Article II, Section 4A of the City Charter.

Contractor asserts, first, that the contract language creates an arbitration clause and is binding on the City. Alternatively, Contractor argues, and the City does not disagree, that the provision is void because it conflicts with language of the City Charter. The parties agree that the dispute resolution procedure is found in Section 4A of the Charter, but disagree whether it is particularly found in subsection (b) or (c).

It is Contractor's contention that, even if the contract clause is void, the language of the clause demonstrates that the parties intended that disputes be resolved by reference to the

binding arbitration provision of subsection (b). Specifically, Contractor contends that the words "to prevent disputes and litigation", "the referee", and "final and conclusive", clearly demonstrate that binding arbitration is intended. Moreover, Contractor posits that the contract language best conforms with Baltimore City Charter, Article II, Section 4A, subsection (b), and preserves the parties' intention for arbitration. Thus, Contractor asks us to reform the clause to fit the language of subsection (b).

In contrast, the City argues that the contract provision is of no effect, having been subsumed by Article II, Section 4A of the City Charter, providing an administrative remedy that must be exhausted as a prerequisite to litigation. It is the City's position that, because both subsection (b) and (c) of Section 4A contain the wording "... Baltimore City may require or provide ...", the City enjoys the prerogative of directing the dispute to either the arbitration procedure of subsection (b) or the administrative remedy of subsection (c).

Standing alone, we would agree with Contractor that the contract clause is an arbitration clause. First, the clause provides that a named "referee" is to provide the resolution of any question arising from the contract. This language empowers one non-judicial person to resolve a broad category of contractual issues. That person, then, becomes the private tribunal substituting for that of the public, i.e., the court. Such substitution is integral to the definition of arbitration.[6] Moreover, whether that person is termed "referee" or "arbitrator" is not dispositive as to that person's role as an arbitrator. Maryland appellate courts have recognized arbitration where the parties have failed to include the term "arbitration", "arbitrate", or "arbitrator" in their contractual dispute resolution clauses. *See, e.g., City of Baltimore v. Allied Contractors, Inc.,* 236 Md. 534, 204 A.2d 546 (1964); *Nelley v. Mayor and*

---

**6.** "A method of dispute resolution involving one or more neutral third parties who are usually agreed to by the disputing parties and whose decision is binding." BLACKS'S LAW DICTIONARY, 100 (7TH Ed.1999).

*City Council of Baltimore City*, 224 Md. 1, 166 A.2d 234 (1960); *Joseph F. Trionfo & Sons, Inc., v. Earnest B. Larosa & Sons, Inc.*, 38 Md.App. 598, 381 A.2d 727, *cert. denied*, 282 Md. 734 (1978).

Furthermore, the clause empowers that person to resolve the questions arising from the contract in a "final and conclusive" fashion. It is not unreasonable to conclude that the language "final and conclusive" can refer only to arbitration and not, for instance, to an alternative dispute resolution procedure such as conciliation or mediation. Mediation characteristically involves decisions that are non-binding and, as such, would lack a "conclusive" effect. BLACK'S LAW DICTIONARY 996 (7th ed.1999) defines mediation as "a method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution."

Contractor supports its position that the contractual clause is an arbitration clause by reliance on *Nelley v. Mayor and City Council of Baltimore, supra,* 224 Md. 1, 166 A.2d 234, and *Mayor and City Council of Baltimore v. Allied Contactors, Inc., supra,* 236 Md. 534, 204 A.2d 546. Contractor asserts: "The City has included this very same provision in its construction contracts for over half a century", and the Court of Appeals has construed the language as an arbitration clause.

Contractor's reliance, however, is misplaced for two reasons. First, neither *Nelley* nor *Allied Contractors held* that the language was an arbitration clause—the reference in both was merely *dicta.* Second, Section 4A had not been enacted at the time of the Court's decisions in *Nelley* and *Allied Contractors.*[7] Therefore, those cases are not useful in examining a dispute that has arisen in the face of the subsequently amended City Charter.

---

**7.** Article II, Section 4A was enacted by the City Council in 1984 and amended in 2002, apparently in response to the statements by the Court of Appeals in *Nelley* and *Allied Contractors.*

We recognize that Contractor could reasonably rely on the City's past use of the same or similar contractual dispute resolution clause to signify a current agreement to arbitrate. Indeed, the same language was included in Baltimore City public works contracts more than 45 years ago. *See Nelley, supra.*[8] In *Nelley,* the Court of Appeals, albeit without deciding, treated the clause as an arbitration clause. *Id.* (referencing identical clause as "arbitration clause" ten times in its opinion). Similarly, this Court has recognized, without holding, that the clause may be viewed as an arbitration clause. *See generally Joseph F. Trionfo & Sons, Inc., supra,* 38 Md.App. 598, 381 A.2d 727 (referring to a similarly worded clause as an "actual arbitration" clause).

Notwithstanding this recognition, even if we interpret the contract clause as an arbitration clause, appellant's position is not rewarded. It is a well-established principle of Maryland contract law that parties are presumed to contract mindful of the existing law, and that "all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, except where a contrary intention is evident." *See Lema v. Bank of Am.,* 375 Md. 625, 645, 826 A.2d 504 (2003) (quoting *Wright v. Commercial & Savs. Bank,* 297 Md. 148, 153, 464 A.2d 1080 (1983)); *see also Wickman v. Kane,* 136 Md.App. 554, 566, 766 A.2d 241 (2001) (stating that this principle is one of "commonsense") *cert. denied,* 364 Md. 462, 773 A.2d 514 (2001); *Gontrum v. Mayor & City Council of Baltimore,* 182 Md. 370, 378, 35 A.2d 128 (1943) (Persons dealing with a municipality are presumed to know the nature and extent of the authority of municipal officers). Mindful of this principle, and because the Baltimore City Charter, Article II, Section 4A, existed at the time of execution of the contract *sub judice,* its terms are incorporated into the contract.

---

**8.** We were advised at oral argument that the contract at issue was a standard public works contract, drafted by agents of the City of Baltimore. The record does not tell us if the "arbitration" clause is standard in all City public works contracts, or if it was used only in the contracts that led to litigation, *i.e., Nelley, Allied Contractors,* and the instant case.

The contract clause is in conflict with Section 4A because it does not, as the Charter requires, provide for judicial review of the decisions of City officials regarding contract disputes. Rather than being declared void, however, the contract provision must be reformed to conform to established Maryland contract law. In *Rogers Refrigeration Co. v. Pulliam's Garage, Inc.*, 66 Md.App. 675, 684, 505 A.2d 878 (1986), a case involving the omission of certain statutorily required notice provisions, we said "the contract ... was not an illegal one. Rather, the [notice] requirements were impliedly incorporated into its terms[.]"

In the case *sub judice*, where (for reasons unclear from the record) the City continued for many years to use the out-dated dispute resolution procedure from the "Green Book," and the language of the contract conflicts with Section 4A, the Charter provisions will be incorporated into the contract in order to conform it with current requirements of the City Charter. Thus, the dispute resolution procedure will be governed by Article II, Section 4A, of the City Charter.

Our next inquiry, then, is which alternative must be utilized.

■ Section 4A(a) precludes binding arbitration by an officer or official body of the City. The remedy, then, lies in either subsection (b) or subsection (c). The former subsection provides for the selection, by the disputing parties, of either a single neutral party, or, in the event of their inability to agree on a single neutral party, a traditional three-party panel. The latter subsection, on the other hand, provides that determinations of fact may be made by an officer or official of the City, subject to the right of judicial review of the decision made by that official. The option to select either procedure, as we have pointed out, *supra*, is held by the City.

### Exhaustion of Remedies

■ The ruling of the circuit court was premised on Contractor's having failed to conclude the process that it had initiated; that is, it failed to exhaust its administrative remedy as to its claim for damages. It is beyond dispute that, under

established Maryland law, one must, where an administrative procedure is provided, exhaust that procedure before seeking judicial intervention.  *See Brown v. Fire and Police Employees' Ret. Sys.,* 375 Md. 661, 669–70, 826 A.2d 525 (2003); *Intercom Sys. Corp. v. Bell Atlantic of Maryland, Inc.,* 135 Md.App. 624, 634, 763 A.2d 1196 (2000).

### Conclusion[9]

We hold that the "Green Book" provision, as set forth in the contract between the parties, is void to the extent that it provides for mandatory arbitration in conflict with Article II, Section 4A of the Baltimore City Charter.  Because we so hold, the parties' dispute must be submitted for resolution under either subsection (b) or subsection (c) of Section 4A. We further hold that the option as to which of those processes is to be followed rests with the City, considering the wording in Section 4A that *"Baltimore City* may require or provide...." (Emphasis added.)

Finding no substantive error, we shall affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS ASSESSED TO APPELLANT.**

---

**9.**  Contractor also argues that any ambiguity in the contract must be construed against the City, as the drafter of the contract, under the doctrine of *contra proferentem.*  Because we find no ambiguity, we need not address that argument.